# REVISED

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 95-60581

HEKMAT WADIH MIKHAEL,

Petitioner,

versus

IMMIGRATION AND NATURALIZATION
SERVICE,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

June 4, 1997

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Hekmat Wadih Mikhael ("Mikhael") appeals the Board of Immigration Appeals' ("BIA" or "the Board") affirmance of the Immigration Judge's ("IJ") denial of his application for asylum and withholding of deportation. After a careful review of the record, the briefs and the arguments of counsel, we VACATE the decision of the BIA and REMAND with instructions to reconsider Mikhael's asylum and withholding of deportation requests.

## BACKGROUND[1]

---

[1]The record is replete with information (newspaper articles, affidavits, government foreign affairs brochures, etc.) concerning the varying degrees of strife in Mikhael's homeland of Lebanon. The parties vehemently disagree over whether Syrian presence in Lebanon is but a part of the strife in Lebanon or whether

Mikhael is a Greek-Orthodox Christian Lebanese citizen who was born in Sierra Leone, Africa, in 1966. In 1975, his family moved to Tripoli, Lebanon from Sierra Leone. That same year, the Lebanese civil war started. In subsequent years, the Mikhael family suffered through many violent incidents related to their religious and political beliefs. In 1978, Mikhael's father was kidnaped by Syrian radicals and held for two or three days before his release. Mikhael testified that his father was kidnaped because he was British and a Christian. Also during that time, the family car was stolen and their house was bombed and burned. Following these incidents, the Mikhael family moved from Tripoli to Christian East Beirut, which the Mikhael family considered to be safer than Tripoli. In 1979 or 1980, Mikhael's older brother, George, was shot in the leg by Muslims on his way from school. In 1982, another brother, Michael, was kidnaped and held for several days by Palestinians. During the days of his detention, Michael was tortured with electric shocks. Mikhael testified that his brother was kidnaped because he was active in the political faction known as the Phalange. Thereafter, fearing for his sons' lives, Mikhael's father sent George and Michael out of the country. Both brothers are now United States citizens, as is some of Mikhael's immediate family.

Mikhael, on the other hand, was not sent out of the country until 1988, when he entered the United States on a student visa to attend college in Louisiana. However, in 1987, prior to being sent out of the country, Mikhael was detained by Syrians for three hours. Mikhael contends that he was accused of being a Phalangist, probably because he had previously attended several meetings led by a Phalange leader. During the detainment, the Syrians assaulted him with a gun across his forehead, from which he carries a permanent scar. Thereafter, in December 1988, Mikhael's father sent him to the United States as a nonimmigrant student in order to attend college.

In January 1989, Mikhael enrolled as a student at the University of Southwestern Louisiana ("USL") in Lafayette. During two different school Christmas breaks, he departed for Lebanon to visit with family. On Mikhael's first trip back to Lebanon, he was detained at the Beirut airport for 45 minutes by Syrian officials. To avoid being detained again by Syrians, Mikhael departed for the

the Syrians remain a dominant threat to all Christians throughout the country.

2

United States from the Christian controlled port of Jouneh. On his second trip back to Lebanon the following Christmas, Mikhael traveled entirely through the port of Jouneh and was not detained either time. Since January 7, 1991, Mikhael has been continuously present in the United States. Since May 1992, Mikhael has held several jobs, but he has not attended USL or any other university. While at USL, Mikhael met a fellow student named Lisa, whom he eventually married in June of 1994. The couple currently resides in Lafayette, Louisiana. On April 22, 1993, Mikhael was convicted in the United States District Court for the Western District of Louisiana, for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. He was sentenced to twelve months imprisonment followed by thirty-six months supervised release. Mikhael served his time and was released from incarceration in May 1994.

On February 7, 1994, the Immigration and Naturalization Services ("INS") issued an Order to Show Cause ("OSC"), charging Mikhael as deportable under Immigration and Nationality Act ("INA" or "the Act") section 241 (a)(1)(C)(I), entitled Failed to Maintain or Comply with the Conditions of Nonimmigrant Status. The OSC was later amended by also charging Mikhael with being deportable under section 241 (a)(2)(A)(I) of the INA. Deportation proceedings commenced on April 12, 1994, and were continued. On July 13, 1994, Mikhael admitted the charges and conceded deportability and the IJ designated Lebanon as the country of deportation; however, because Mikhael's conviction was not final and his U.S. citizen wife had filed INS form I-130 petition for Alien Relative on his behalf, the IJ adjourned the proceedings. Finally, on March 3, 1995, a deportation hearing was conducted in Oakdale, Louisiana. On March 21, 1995, the IJ issued his decision and order denying Mikhael's application for asylum, withholding of deportation, and waiver of deportation. On May 15, 1995, Mikhael filed a timely appeal to the BIA. On September 1, 1995, the BIA dismissed Mikhael's appeal in a one-paragraph Per Curiam opinion. This timely petition for review followed.

## STANDARD OF REVIEW

We review factual findings of the Board to determine if they are supported by substantial evidence in the record. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will reverse only when the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* We accord deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect. *Rojas v. INS*, 937 F.2d 186, 189 (5th Cir. 1991).

We have authority to review only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994). Here, the BIA affirmed the IJ's decision "based upon and for the reasons set forth in that decision"—in essence, the BIA adopted the IJ's decision. Thus, we must review the IJ's decision. *Gomez-Mejia v. INS*, 56 F.3d 700, 702 (5th Cir. 1995).

## DISCUSSION

The Act "provide[s] two methods through which an otherwise deportable alien who claims that he or she will be persecuted if deported can seek relief. These are 1) asylum, and 2) withholding of deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). Here, Mikhael applied for and was denied both. We will review each claim separately.

### I. ASYLUM

Pursuant to section 208 of the Immigration and Nationality Act, the Attorney General has the authority to grant asylum to any alien who the Attorney General determines to be a refugee according to the definition provided by § 101(a) (42)(A) of the Act ("§ 101"),  8 U.S.C.  1101 (a)(42)(A) (1996).  For the purpose of asylum a refugee is

> any person who is unwilling to return to, and is . . . unwilling to avail himself or herself of the protection of, that country because of persecution "or" a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

4

Section 101 (a) (42)(A) INA, 8 U.S.C. § 1101 (a) (42)(A) (emphasis added). Moreover, § 101, written in the disjunctive, allows a finder of fact to make a determination of an alien's refugee status if either persecution[2] or a well-founded fear of persecution is shown. However, merely being classified as a refugee does not automatically grant the alien asylum. Section 208 is a provision stated in precatory language, i.e., it allows the Attorney General the discretion to grant asylum to refugees. *See* INA section 208, 8 U.S.C. § 1158 (a); *Castillo-Rodriguez v. INS*, 929 F.2d 181, 184 (5th Cir 1991).

In his asylum application, Mikhael asserted that he was entitled to relief because of his (1) past persecution, and (2) well founded fear of future persecution based on his religious and political beliefs. Thus, our primary concern in this case is the IJ's consideration of both of Mikhael's claims.

A. Mikhael's Credibility.

On appeal, Mikhael specifically challenged the IJ's adverse credibility determination, however, the BIA declined to specifically address the credibility issue. The BIA stated "as we specifically find the Immigration Judge correctly addressed all issues other than credibility raised on appeal, the decision of the Immigration Judge is affirmed based on and for all the reasons set forth in that decision." After a *de novo* review, the BIA affirmed the IJ's alternative determination "that even had he [IJ] accepted the respondent's testimony as credible, it would not have established the respondent's eligibility for asylum or withholding of deportation." Thus, because credibility is not an issue, we need only review the IJ's decision to the extent the decision addresses the factual and legal predicate upon which it found Mikhael ineligible for asylum.

B. Past Persecution.

---

[2]Persecution has been defined as:
   The infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

*Abdel-Masieh v. INS*, 73 F.3d 579 (5th Cir. 1996)(quoting *Matter of Laipenieks*, 18 I & N Dec. 433, 456-457 (BIA 1983)(citations omitted)).

Mikhael argues that he and other members of his immediate family have been victims of past persecution for their religious beliefs by the Syrians and Muslims and he is fearful of returning to Lebanon because of its takeover by the Syrians. Before the BIA and before this court, Mikhael maintains that, having established past persecution, he was entitled to the presumption of a well-founded fear of future persecution accorded by 8 CFR § 208.13 (b)(1).[3] He asserts error by the IJ in not finding him to be a refugee on the basis of past persecution. Moreover, at oral argument, he asserted that the IJ failed to even make a finding on his past persecution claim. In support of his claim of past persecution, Mikhael presented the following evidence:

(1) In 1978, his home was bombed and destroyed and the family car was stolen.

(2) In 1978, his father was kidnaped by Syrian radicals and held for 2 or 3 days.

(3) Around 1979, his older brother, George, was shot in the leg by Muslims on his way home from school.

(4) In 1982, his brother, Michael, was kidnaped and tortured for several days by Palestinians.

(5) In 1987, he was detained for three hours and assaulted by Syrians.

(6) In 1989, he was detained by Syrian officials at Beirut airport for 45 minutes.

Essentially, the IJ rejected Mikhael's past persecution claim on the basis that each of the outlined incidents could be easily attributed to the civil unrest in the country during wartime. The IJ found that these occurrences were more related to the "violent nature of the [civil war in Lebanon] than [the alien's] being specifically targeted for persecution." Additionally, the IJ noted that Mikhael's family had remained in Lebanon even after they experienced their alleged persecution. In support of the IJ's findings, the INS cites several cases which have rejected claims of past persecution under

---

[3]8 CFR § 208.13 (b)(1) states in pertinent part: "If it is determined that the applicant has established past persecution, he shall be presumed to have a well-founded fear of persecution. . . ." (Emphasis added.)

6

circumstances involving longer detention, more severe punishment inflicted or greater deprivation.[4] Mikhael, by contrast, does not cite any authority analogous to his situation where claims of past persecution have been sustained based on personal suffering alone or based on a combination of personal and family suffering.

Under the substantial evidence standard applicable to review of denials of asylum, we must defer to the BIA's factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise. Any disagreement we might have with the BIA's appraisal of the facts is not a sufficient ground for reversal. Although a reasonable factfinder <u>could</u> have found these incidents sufficient to establish past persecution, we do not believe that a factfinder would be compelled to do so.

On the basis of the above-discussed facts, we are constrained by our standard of review to conclude that Mikhael has not presented evidence so compelling that no reasonable factfinder could fail to find otherwise. Accordingly, we affirm the BIA's order regarding past persecution.

<u>C</u>. <u>Well-Founded Fear of Persecution</u>**.**

Despite an adverse finding on his past persecution claims, Mikhael could still succeed on his asylum claim based on a demonstration that he possesses a well-founded fear of persecution. In the instant case, Mikhael's asserted fear of persecution is based on religious and political grounds. To prove a well-founded fear of persecution, Mikhael must show that a reasonable person in the same circumstances would fear persecution if deported. *Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1994); *Castillo-Rodriguez*, 929 F.2d at 184. This requirement has both a subjective and an objective

---

[4]*See Ozdemir v. INS*, 46 F.3d 6 , 7 (5th Cir. 1994) (holding alien did not suffer past persecution based on his political opinion when he was detained for three days, questioned about his participation in terrorist organizations, and beaten on the soles of his feet); *Prasad v. INS*, 47 F.3d 336 (9th Cir. 1995) (holding alien not persecuted where he was taken to a jail cell and detained for close to six hours, during which time he was interrogated about his political beliefs, beaten, and kicked); *Sivaainkaran v. INS*, 972 F.2d 161 (7th Cir. 1992) (refusing to grant asylum for alien who was chased and shot at by soldiers and whose home was ransacked); *Kapcia v. INS*, 944 F.2d 702, 705 (10th Cir. 1991) (finding no past persecution where one petitioner was arrested four times, detained three times, beaten once, his house was searched and he was treated adversely at work, and another petitioner was twice detained for two days, interrogated and beaten, his parents' house was searched, he was assigned poor work tasks, his locker was broken into, he was fired from his job, and subsequently detained and beaten again).

component. In other words, Mikhael's assertion of a subjective fear of future persecution must also be objectively reasonable. *Jukic*, 40 F.3d at 749. After carefully reviewing the record and the IJ's decision, we conclude that the IJ applied the wrong standard of proof in determining Mikhael's claim of a well-founded fear of persecution.

We review conclusions of law *de novo*. *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996). Consequently, even though we are required to review factual findings of the BIA for substantial evidence, we nevertheless may reverse a decision that was decided on the basis of an erroneous application of the law. In his decision, the IJ erroneously held that Mikhael **must prove that he would be subject to persecution** if deported.[5] (Emphasis added.) The well-founded fear of persecution prong does not require a showing that the alien would be "subject to" persecution if deported. *See Sanon v. INS*, 52 F.3d 648, 651 (7th Cir. 1995) (stating a person seeking asylum "need not prove that it is more likely than not that he or she would be persecuted in his or her home country"). In *Cordoza-Fonseca*, *supra*, the Supreme Court held that an applicant's fear should be considered well-founded if he can establish, to a "reasonable degree", that his return to his country of origin would be intolerable (emphasis added).[6] Further, in our post *Cordoza-Fonseca* decisions, this Circuit has applied a reasonable person standard when making well-founded fear of persecution determinations.[7]

---

[5]After taking administrative notice of Lebanon's twenty year history of civil war, civil unrest and other acts of violence, the IJ opined:

> However, Lebanon's recent history of violence does not change Respondent's burden of proof. He must still prove that he would be subject to persecution if deported.

[6]In *Cordoza-Fonseca*, the Court stated that one can certainly have a well-founded fear of an event happening even if there is less than a 50% chance of the event occurring. 480 U.S. at 431. It went on to say, "there is simply no room . . . for concluding that because an applicant only has a 10% chance of being shot, tortured, or otherwise persecuted that he or she has no well founded fear of the event happening." *Id.* at 440. Finally, the Court concluded that the alien does not have to show that the persecution will probably occur, but merely that persecution is a reasonable "possibility." *Id.*

[7]*See Abdel-Masieh*, 73 F.3d at 584-85; *Jukic*, 40 F.3d at 749; *Rojas*, 937 F.2d at 18; *Castillo-Rodriguez*, 929 F.2d at 184.

8

The IJ correctly cited *Cordoza-Fonseca* for the proposition that an alien must prove either past persecution or a well-founded fear of persecution for refugee status, however, he abandoned the reasoning of that decision when he analyzed the evidence. Moreover, although references are made to *Jukic* and *Castillo-Rodriguez* regarding this Circuit's reasonable person standard[8], the IJ misapplied the standard by requiring Mikhael to prove "he would be subject to persecution if deported."[9] Normally we might be inclined to find that a single erroneous statement of the applicable standard of proof should not necessarily be enough to affect the whole decision, however, the IJ dispelled any doubts about the soundness of his analysis when he concluded his discussion of Mikhael's well-founded fear of persecution claim by reiterating:

> **Respondent must still show that he <u>will</u> be persecuted on one of the five enumerated grounds. His unsubstantiated allegations . . . does not amount to a well-founded fear of persecution. Therefore, his application for asylum shall be denied.** [Emphasis added.]

Because the evidence of record presents a close call on the existence *vel non* of a well-founded fear of persecution, we are unable and indeed unwilling to assume that the conclusions of the IJ are not permeated by the incorrect statement of law and standard of proof.

The IJ gave cursory allegiance to both the Supreme Court's and this Circuit's precedent, and, instead, held Mikhael to a standard never contemplated by the Act. Holding Mikhael to this erroneous standard arguably changed the complexion of the evidence he presented. We, however, harbor no opinion as to whether Mikhael can sustain his burden of proof under the correct statement of the law. Nonetheless, we are charged with ensuring that the BIA has exercised its expertise in hearing a case. *See Abdel-Masieh*, 73 F.3d at 585 (reversing BIA's decision and holding that its

---

[8]In *Castillo-Rodriguez*, the court denied petitioner's request for asylum by finding that a reasonable person in the petitioner's position would not have had a well-founded fear of persecution. 929 F.2d at 185. This denial was based on facts that showed petitioner's alleged fear of persecution was due to criminal and not political reasons, as was asserted. *Id.*

[9]The citations to *Jukic* and *Castillo-Rodriguez* do not support the proposition for which the IJ cited them. Neither *Jukic* nor *Castillo-Rodriguez* articulate a rule that an alien must prove he or she would be "subject to" persecution if deported.

9

(BIA) decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claim); *Sanon*, 52 F.3d at 651. Rather than correct the IJ's error, the BIA adopted the IJ's decision— except for the credibility determinations— and gave its boilerplate stamp of approval. Thus, it necessarily follows that the BIA adopted the IJ's erroneous application of law. While we do not require the BIA to write a lengthy discourse to explain its decisions, the BIA must assure that its order adopting any or all of the IJ's findings of fact is not infected by an erroneous application of law by the IJ. If the BIA had disclaimed the IJ's erroneous statement of the burden of proof as it did with the IJ's credibility findings, and articulated an independent assessment of the evidence under the correct standard, our review would reflect the substantial deference to the BIA that the statutes and our cases contemplate.

Although the BIA compounded the IJ's error, we are nonetheless reluctant to reverse the BIA's decision and grant Mikhael's request for asylum. "Where an agency has failed to comply with its responsibilities, we should insist on its compliance rather than attempt to supplement its efforts." *Sanon*, 52 F.3d at 652. We make no determination of the merits of Mikhael's claim, but because we are convinced of the BIA's error, we are constrained to remand this case to the BIA for further proceedings. Accordingly, we vacate the BIA's decision and remand for further proceedings under the proper standard of proof on the issue of Mikhael's well-founded fear of persecution.

## II. WITHHOLDING OF DEPORTATION.

The IJ concluded summarily that based on Mikhael's failure to provide sufficient evidence to be granted asylum, he also fell short of the required evidence for withholding of deportation. Unlike in asylum cases, for withholding of deportation purposes, the Act confers no discretionary authority to the Attorney General. Upon satisfaction of the requirements for withholding of deportation, the Attorney General "shall" withhold deportation. *See* INA § 243 (h)(1), 8 U.S.C. § 1253(h)(1). In addition, though reviewed together, a claim for asylum is a distinct remedy than a claim for withholding of deportation. *Bahramnia v. INS*, 782 F.2d 1243, 1247 (5th Cir. 1986). The level of proof required to satisfy the requirements for withholding of deportation is more

10

stringent than for asylum purposes.[10] Here, the standard requires the petitioner to show a "clear probability" that he or she will be persecuted if deported. *Castillo-Rodriguez*, 929 F.2d at 185. As a result, many deportation cases that have not found sufficient evidence for asylum purposes have summarily dismissed requests for withholding of deportation. However, because we remand the case to the BIA to make a determination of Mikhael's asylum request based on his claim of a well-founded fear of persecution, we also remand to the BIA to decide if Mikhael is eligible for withholding of deportation.

## CONCLUSION

We affirm the BIA's conclusion that Mikhael is not a refugee on the basis of past persecution. We hold, however, that the BIA erred by adopting the IJ's decision regarding the well-founded fear of persecution claim where the IJ applied the incorrect standard of proof. Accordingly, we remand for the BIA to reconsider this claim in light of the entire record. Additionally, we remand the withholding of deportation claim for reconsideration after the asylum claim has been determined. The BIA must articulate the reasons for any rulings it makes.

The BIA's order of deportation is VACATED, and the case is REMANDED to the BIA for reconsideration consistent herewith.

VACATED AND REMANDED.

ENDRECORD

---

[10]*See, e.g., Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995) (holding that since petitioner is ineligible for asylum then he is necessarily ineligible for withholding as well); *Castillo-Rodriguez*, 929 F.2d at 185 (same).

EMILIO M. GARZA, Circuit Judge, dissenting:

I agree with the majority that, to qualify as a refugee under the "well-founded fear of persecution" prong of INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A), an alien need not demonstrate a clear probability that he would be subject to persecution if deported; instead, the alien need only show a genuine subjective fear of future persecution and that a reasonable person in the same circumstances would fear persecution if deported. Moreover, I agree that, had the IJ applied the stricter standard of proof, its decision should be reversed and remanded for application of the proper standard to the facts.

However, I respectfully disagree that the IJ applied the stricter standard in this case. The IJ explicitly and correctly stated the proper legal standard of proof:

> An alien has a well-founded fear if a reasonable person in the same circumstances would fear persecution. . . . Even if the chance of persecution is less than clearly probable, a reasonable person may still fear persecution. . . . However, an alien must prove that his fear of persecution is both subjectively genuine and objectively reasonable.

Nothing in the IJ's decision indicates that he did not follow this express articulation of the applicable legal standard. More specifically, the stray remarks cited by the majority, when placed in context, do not demonstrate that the IJ applied the stricter "clear probability" standard.

The majority cites the IJ's statement that "Lebanon's recent history of violence does not change Respondent's burden of proof. He must still prove that he would be subject to persecution if deported." When taken in context, it is clear that the IJ meant only that Mikhael may not rely on past history of violence in Lebanon to satisfy his burden to show a well founded fear of *future* persecution, especially in light of the changed circumstances in that country. The IJ was correct in this pronouncement. In fact, the majority affirms the IJ's finding that because Mikhael failed to demonstrate *past* history of persecution, he may not benefit from a presumption of future persecution.

12

The majority further cites the IJ's statement that:

> Respondent must show that he will be persecuted on one of the five enumerated grounds. His unsubstantiated allegations . . . [do] not amount to a well-founded fear of persecution.

Again, when one places this statement in context, it becomes clear that the IJ did not apply a different standard of proof than that explicitly articulated. The statement follows the IJ's pronouncement that "civil unrest is not a proper ground for proving persecution." Clearly, the IJ meant only to state that, in order to show a well founded fear of persecution, such persecution must be "on account of race, religion, nationality, membership in a particular social group, or political opinion," not due to general civil strife. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). This is a correct statement of the law. *See Bevc v. INS*, 47 F.3d 907, 910 (7th Cir. 1995); *Limsico v. INS*, 951 F.2d 210, 212 (9th Cir. 1991).

Where the IJ has explicitly set forth the proper standard of proof, we should presume that the IJ did, in fact, follow that standard unless there is convincing evidence to the contrary, evidence I find lacking here. The IJ's finding that Mikhael's fear of persecution stems from generally harsh conditions and civil strife in Lebanon, not targeted persecution on the basis of his political or religious beliefs, is supported by the evidence. Therefore, I discern no grounds for reversal. I respectfully dissent.