**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-60474
(Summary Calendar)
_____

MARIO GALVEZ-URIAS,

                                        Petitioner,

versus

JOHN ASHCROFT, U.S. Attorney General,

                                        Respondent.

_____

Appeal from the Board of Immigration Appeals
(A74 636 334)
_____
February 14, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:

Petitioner Mario Galvez-Urias ("Galvez") petitions for us to review a final deportation order entered by the Board of Immigration Appeals ("BIA"). Having reviewed the facts that form the basis for Galvez's request for asylum and having applied the relevant provisions of law, we affirm the BIA's order and dismiss

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Galvez's petition.

I.

FACTS AND PROCEEDINGS

Galvez arrived without inspection in the United States in December 1989, expecting that he would not stay long. He had fled his native El Salvador in fear that he would be harmed by members of the Salvadoran insurgent group Farabundo Marti National Liberation Front ("FMLN"). Galvez, who worked on his family's farm, was kidnaped by the FMLN in 1987 and forced to do menial work, such as cooking, hauling, and begging for food. The rebels did not physically harm Galvez, who testified that he was abducted because his father would not give them food. After six months, Galvez was able to escape from the FMLN camp and return to the family farm.

About a month after his return, Galvez heard that the FMLN was looking for him, so he went to stay with a friend. Thereafter, the guerrillas returned to Galvez's father's house, looking for Galvez and seeking food. When his father again refused to provide food, he was shot and killed. Galvez stayed for a few days with a brother and then a cousin, both of whom lived in the same small town where the family farm was located, Canton Las Tavlas. According to Galvez, both the brother and the cousin were subsequently shot to death by the FMLN in separate incidents. Galvez testified that the cousin found a note near the brother's

2

body warning that Galvez, too, would be killed if he did not return to the guerrillas voluntarily.

Galvez fled to another town in a different part of El Salvador, where he remained for more than a year before returning to Canton Las Tavlas to join a group being organized to protect local farmers' crops. On learning that his cousin had been killed, however, Galvez, then 28, fled for the United States, where some of his relatives lived. Since his arrival in this country, Galvez has been in contact with his four children, who remain in El Salvador. The children have urged him to stay in the United States, he testified, and told him that the guerrillas who abducted him in 1987 continue to look for him at the family home.

In deportation proceedings brought by the Immigration and Naturalization Service in 1996, Galvez conceded his deportability but applied for asylum pursuant to § 208(a) of the Immigration and Nationality Act.[1] He appeared before an Immigration Judge ("IJ") in May 1997. The IJ found him generally credible, but concluded that Galvez had failed to establish past persecution or a well-founded fear of future persecution if he returned to El Salvador. The IJ wrote that "[i]t has been at least seven years since the respondent has been in El Salvador, and his testimony based on reports of his family that the same people who abducted him in 1987 are still looking for him, are simply unbelievable especially since

---

[1] 8 U.S.C.A. § 1158(a). Galvez also requested withholding of deportation, but does not appeal its denial.

3

they're unsupported by any objective evidence." The IJ noted that Galvez was not a prominent political figure. The IJ also relied on a U.S. State Department country report on El Salvador, which indicated that conditions have improved and political violence has declined since the 1992 signing of peace accords ended a twelve-year civil war, and that persons fearing harm from recidivous guerrillas had the option of relocating elsewhere within El Salvador. The IJ denied Galvez's application for asylum, but found him to be a person of good moral character and granted his request for voluntary departure.

Galvez appealed to the BIA. It affirmed the immigration judge, agreeing that Galvez had failed to demonstrate that he suffered past persecution or had a well-founded fear of future persecution in El Salvador on the basis of any of the statutory grounds for asylum: race, religion, nationality, membership in a particular social group, or political opinion.[2] The Board wrote that Galvez's claim that he still has reason to fear harm from the former guerrillas "is not supported by the country conditions information in the record, which states that the civil war has ended and that former guerrillas have been integrated in to political life." Galvez timely perfected this appeal.

II.

_____

[2] See 8 U.S.C.A. §§ 1101(a)(42)(A); 1158(a); 1253(h).

ANALYSIS

We review factual findings of the BIA to determine if they are supported by substantial evidence in the record.[3] We will reverse only when the evidence is "'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'"[4] The well-founded fear of persecution standard requires a subjectively genuine fear of persecution that is objectively reasonable.[5]

Galvez argues that the Board erred in failing to consider the cumulative impact of his personal experiences, which establish past persecution and a well-founded fear of future persecution based on a political opinion imputed to him by the guerrillas. Specifically, Galvez argues that members of the FMLN believe that he is politically opposed to them and want to punish him for fleeing their camp; and he remains in fear of his life. He says that the murders of his father and brother are evidence of this persecution. In addition, Galvez expresses fear of persecution from the Salvadoran military based on his past contact with the FMLN rebels.

We are sympathetic to the traumas Galvez suffered in his homeland; however, the highly deferential standard of review

---

[3] Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1997).

[4] Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

[5] Id. at 304.

established by the Supreme Court in <u>INS v. Elias-Zacarias</u>[6] dictates the result in this case. We find that the BIA's factual findings are supported by substantial evidence in the record, and that Galvez's evidence of the likelihood of persecution on his return to El Salvador under the current conditions is not adequately compelling to warrant reversal. In other words, his subjective fear of persecution is genuine but it is not objectively reasonable under today's conditions.

Two considerations in particular support this conclusion. First, the Supreme Court has held that coercive conscription by a guerrilla group is not the automatic equivalent of persecution based on political opinion.[7] Second, State Department evidence shows that conditions in El Salvador have improved substantially in the years since Galvez left. Based on that evidence, the BIA concluded that Galvez in particular should be able to live without fear of political persecution either in his hometown or in another region of El Salvador. We do not see in this record evidence "'so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'"[8]

---

[6] 502 U.S. 478, 483-84 (1992).

[7] <u>Elias-Zacarias</u>, 502 U.S. at 482; <u>see also</u> <u>Rivas-Martinez v. INS</u>, 997 F.2d 1143, 1146-47 (5th Cir. 1993) ("[T]he Court requires the alien to show that he refused to participate for his own political reasons.").

[8] <u>Mikhael</u>, 115 F.3d at 302 (quoting <u>Elias-Zacarias</u>, 502 U.S. at 481).

III.

CONCLUSION

For the forgoing reasons, we AFFIRM the decision of the BIA and DISMISS the petition of Galvez-Urias.

AFFIRMED; petition DISMISSED.