**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60644
(Summary Calendar)

SUHARDY,

Petitioner,

versus

JOHN ASHCROFT, U.S. ATTORNEY GENERAL,

Respondent.

Appeal from the United States District Court
for the Northern District of Texas
(A76-394-192)

June 12, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Fnu Suhardy ("Suhardy") appeals the decision of the Bureau of Immigration Appeals ("BIA")

affirming the Immigration Judge's ("IJ") decision to deny his application for protection under the

Convention Against Torture ("CAT"). For the following reasons, we affirm the decision of the BIA.

Factual and Procedural History

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Suhardy is a citizen of Indonesia who entered the United States on or about May 18, 1997, as a non-immigrant alien in authorization to remain in the United States for a temporary period not to exceed 29 days. The INS arrested Suhardy on January 11, 1998, while he was en route to Atlanta, Georgia, from Los Angeles, California. However, between 1994 and 1997, Suhardy visited the United States two other times, but subsequently returned to Indonesia two times for a cumulative period of six months in 1995 and 1996.

Suhardy files the instant appeal on the basis that he is subject to torture in his home country of Indonesia because he is homosexual and because he is the subject of sirik by two different families. Sirik is the Indonesian Islamic tradition of ritual honor killing wherein a person or family who has been shamed may remove the shame by killing the purveyor of the shame. Suhardy claims that he is the subject of sirik in the two following instances: 1) as a result of being engaged to a woman who became pregnant by another man before her marriage to Suhardy and whose family did not realize that Suhardy had not engaged in sexual relations with her and was therefore not the father of the child and 2) as a result of being caught in a sexual act with another man by the man's brother.

After his detention, Suhardy applied for asylum and withholding of removal which the Immigration Judge denied on April 28, 1998. Suhardy subsequently appealed to the BIA which dismissed the appeal on December 16, 1998.[2] The BIA granted Suhardy's motion to reopen his case in order to pursue a claim for protection under the CAT. The IJ subsequently denied Suhardy's motion to withhold removal under CAT, which the BIA subsequently upheld. Suhardy now appeals.

---

[2] This Court affirmed this decision by the BIA on November 11, 1999, denying Suhardy's applications for asylum and withholding of removal.

## Discussion

This Court must defer to the factual findings of the BIA "unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." Mikhael v. INS, 115 F.3d 299, 304 (5th Cir. 1997). In addition, in order for a petitioner to be eligible for withholding of removal under the CAT, one must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (2001). The CAT states:

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her . . . punishing him or her for an act he or she or a third person has committed or is suspected of having committed . . . or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1) (2001). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(7) (2001). Thus, in order for there to be a torture claim, a public official must have 1) prior awareness of such activity; 2) a legal responsibility to intervene in order to prevent the activity; and 3) breach of that legal responsibility. Id.

Suhardy appeals the BIA's decision to deny his application for protection under the CAT on the basis that Indonesian public officials and police turn a blind eye to sirik, as police will not investigate or interfere if an individual is targeted with it. He furthermore asserts that Indonesian authorities fail to investigate sirik murders. Suhardy also argues that in Indonesia, there is a general

3

disdain for homosexuality, as evidenced by the tauntings he has suffered during his life in Indonesia as a result of his sexual orientation.

In contrast, the government asserts that Suhardy fails to show that the evidence compelled the BIA to conclude that he merits protection under the CAT because Suhardy did not provide any proof that any public official in Indonesia would participate in or condone acts taken against Suhardy as a result of his homosexuality and sirik. Thus, although Suhardy provided the BIA with evidence of a general disdain of homosexuality in Indonesia as well as a couple of instances of sirik in which the police may have failed to investigate or interfere, the government contends that he did not provide specific proof of instances in which the authorities acquiesced in torture against Suhardy personally.[3]

The BIA declined Suhardy's petition because it determined that Indonesian public officials did not acquiesce in the sirik against Suhardy. It relied on Matter of S.V., Interim Decision 3430 (BIA 2000), which stated in a similar petition invoking the CAT that the petitioner must show that the authorities "willfully accept" the actions of the torturers in order to demonstrate acquiescence. That case also stated that "a government's inability to control a group ought not lead to the conclusion that the government acquiesced to the group's activities."

Indeed, the BIA noted that, in an instance in which Suhardy's mother informed the police of Suhardy's homosexuality after her house had been vandalized and after Suhardy had been found engaging in a homosexual act, authorities still had no prior awareness of the sirik against Suhardy. Because there was no prior awareness, they could not have breached their legal responsibility to intervene to prevent the sirik. Similarly, it stated that the acts which Suhardy suffered as a result of

---

[3] The government also argues that Suhardy's instant appeal is barred by res judicata. Because we affirm on other grounds, we pretermit discussion of this issue.

the sirik imposed against him by two families, were committed by private actors and not public officials or individuals acting in an official capacity. Furthermore, the BIA noted that Sirik's claim of torture is not subjectively genuine given that he voluntarily returned to Indonesia two times after he first visited the United States and before he was ultimately detained for having overstayed his visa.

We agree with the BIA, given that our review of the record indicates that Suhardy failed to prove that he would more likely than not be tortured if he returned to Indonesia. The evidence does not appear so compelling that a reasonable fact finder could fail to find that Indonesian public officials neither engaged in acts of torture nor acquiesced in such acts against Suhardy. Therefore, the BIA did not err in its factual findings.

## Conclusion

For the foregoing reasons, we affirm the decision of the BIA.

AFFIRMED.