IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-60296
_____



SINTAYEHU ABEBE WONDIMU,

                                        Petitioner,


        versus


JOHN ASHCROFT, U S Attorney General,


                                        Respondent.



_____

Petition for Review of an Order
of the Board of Immigration Appeals
(A73 725 353)
_____

August 13, 2002

Before GARWOOD, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:[*]

    Ethiopian citizen Sintayehu Wondimu appealed the denial of his

petition for asylum and withholding of deportation, but the Board

of Immigration Appeals dismissed his appeal because conditions in

Ethiopia had changed such that his fear of future persecution was

no longer well-founded.  The Board also disregarded the immigration

_____

    [*]Pursuant to 5TH CIR. R.47.5 the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judge's negative credibility finding without itself awarding him a positive credibility finding and it denied Wondimu's request for asylum based solely on past persecution. Wondimu appeals all three decisions to this court. Because the record contains no substantial evidence supporting the BIA's finding of changed country conditions, we vacate and remand.

## Background

Sintayehu Wondimu is an Ethiopian citizen who first came to the United States on a student visa in 1989 to attend Texas Southern University in Houston, Texas. He left the university and returned to Ethiopia in December 1993 after his father's death.[1] Soon after Wondimu arrived, he joined the All-Amhara People's Organization ("AAPO"), a group of ethnic Amharas who oppose the present Transitional Government of Ethiopia ("TGE"). The TGE was founded by the Ethiopian People's Revolutionary Democratic Front ("EPRDF"), a group dominated by ethnic Tigrayans. Wondimu was not a prominent member of the AAPO: he held no office and did not publicly participate in AAPO activities.

A month and a half after he arrived in Ethiopia, Wondimu married his wife, Nigat Bekele Abebe. Soon thereafter, he renewed his United States student visa even though he claims he intended to stay in Ethiopia. His reasons for doing so are not clear; he

---

[1] In his application for asylum, Wondimu said he left the United States because "things didn't work out with going to college."

2

claimed that it was to "express" to the United States that he was in Ethiopia but he also admitted that the visa would provide an escape route if the government continued persecuting Ethiopians who had traveled to the United States.

On March 23, 1994, Wondimu was kidnapped from his home in the middle of the night by people he identified as members of the EPRDF because of their Tigrayan accents, their appearance and the focus of their questions. He was confined for two and a half months, during which time he was drugged, constantly handcuffed and blindfolded, kept in unsanitary conditions, and interrogated daily with beatings. The interrogations focused primarily on his time in the United States and his reasons for going there. When his captors were apparently satisfied that Wondimu was neither an AAPO leader nor an information courier, they released him by throwing him out of a moving car. His unsanitary imprisonment led to a fungal skin infection and the violent method of release resulted in an injured hip, although he did not seek medical care for either ailment. After his release, Wondimu continued to live in Ethiopia for two months though he and his family continued to be threatened. On one occasion, his sister was slapped, detained and interrogated for eight days.

On July 25, 1994, Wondimu's wife fled to India. Three days later, Wondimu returned to the United States and entered at Houston, Texas using his student visa. He completed an affirmative

3

application for asylum in December 1994, and the INS issued an Order to Show Cause on March 1, 1995 based on his failure to attend a university as required by the terms of his student visa.

At his hearing on June 19, 1995, Wondimu conceded his deportability and attempted to establish eligibility for asylum or withholding of deportation. Among the items of evidence introduced at the hearing were State Department reports from 1994 and 1995, reports from Amnesty International, Ethiopian news articles, and letters from Wondimu's wife discussing his incarceration. The immigration judge found Wondimu "not completely credible" due to discrepancies in his story regarding the reason he left the United States in 1993 and the government's treatment of his sister. In addressing the evidence, the judge chose to rely on the State Department reports instead of the more-pessimistic Amnesty International reports and felt that the news articles were a mixed bag of fact and opinion that failed to support Wondimu's story. The judge also discounted the letters from Wondimu's wife under the theory they were probably concocted solely for the purposes of his asylum application. Accordingly, the judge held that Wondimu had failed to carry his burden of demonstrating past discrimination on account of his political convictions and denied the application for asylum. The immigration judge permitted Wondimu to voluntarily depart.

The Board of Immigration Appeals took up Wondimu's appeal

4

after an unexplained six year delay and finally affirmed the decision on March 6, 2001.  The BIA found the immigration judge's adverse credibility finding unsupported by the record and refused to defer to it, arguing that any inconsistencies relating to his father's death were immaterial to the asylum application, as were inconsistencies in Wondimu's description of his sister's treatment.  The Board added that it disagreed that the somewhat hurried timeline of events cast doubt on Wondimu's story and found it "inexplicabl[e]" that the immigration judge would reject the letters from Wondimu's wife.  Accordingly, the BIA refused to "accord deference to the Immigration Judge's adverse credibility finding."  At the same time, the BIA expressly refused to itself find Wondimu credible, explaining instead that "this is a case where we lack a firm conviction either way as to credibility."

The BIA did *not* then decide whether Wondimu had established past persecution by the TGE.  The Board held instead that even if Wondimu had suffered past persecution, conditions in Ethiopia had changed to an extent that rebutted any presumption of a well-founded fear of future persecution.  *Without* using its power of administrative notice to add to the record after the six-year delay, the BIA cited statements in the 1994 and 1995 State Department reports that the TGE had not *increased* violence against low-level AAPO supporters, had included Amharas in the government, and was not targeting Amharas for mistreatment.  The BIA also

5

observed that the newspaper articles tended to show only that certain political leaders were the ones being persecuted. Accordingly, the BIA rejected Wondimu's application for asylum. The Board also refused to grant Wondimu asylum for humanitarian reasons, holding that his treatment was not "sufficiently severe." Accordingly, the appeal was dismissed. One Board member dissented from this conclusion, explaining that she would have found Wondimu credible. This member further argued that circumstances in Ethiopia had not changed in a way that rebutted the presumption of a well-founded fear of future persecution.

Wondimu timely appealed to this court. We have jurisdiction under the modified form of 8 U.S.C. § 1105a set forth in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[2]

## Discussion

Wondimu argues that the BIA erred by holding that the conditions in Ethiopia had changed in a way that rendered his fear of future persecution no longer well-founded. "We review the factual findings of the Board to determine if they are supported by substantial evidence in the record." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997), *citing INS v. Elias-Zacarias*, 112 S.Ct. 812, 815 (1992). "We will reverse only when the evidence is so

---

[2] Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), *as amended by* Act of Oct. 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656.

compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id*. (quotation omitted). We review only the order of the BIA, not the order of the immigration judge. *Id.*

To be defined as a refugee, the necessary first step to be eligible to receive the discretionary grant of asylum, a petitioner must show past persecution or a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(b)(1); 8 U.S.C. § 1101(a)(42)(A). A petitioner who fails to carry this burden has necessarily failed to carry the heavier burden required for withholding of deportation. *Mikhael*, 115 F.3d at 306. A petitioner who establishes past persecution on account of one of these enumerated factors will be presumed to have a well-founded fear of future persecution, except where "a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return."[3]  8 C.F.R. §

_____

[3] The regulations have since been changed. Effective January 5, 2001, the regulations require that the change be "fundamental." *See* 8 C.F.R. § 208.13(b)(1)(i)(A) (2002); 65 Fed. Reg. 76121, 76133 (Dec. 6, 2000). The regulation was changed to harmonize the application of the INA with the 1951 Convention Relating to the Status of Refugees and the United Nations High Commissioner for Refugees' Handbook on Procedures and Criteria for Determining

7

208.13(b)(1)(i) (2000); *see also In re N- M- A-*, Int. Dec. 3368 (BIA 1998) (en banc) (interpreting the regulation as an evidentiary presumption).

In this case, the BIA found that even if Wondimu suffered persecution in the past, the circumstances in Ethiopia had changed to a degree that defeated the presumption of a well-founded fear of future persecution. The BIA based its finding on three points. First, the Board noted that while the State Department reports contained evidence of oppression of those AAPO leaders "actively supporting insurrection," there were no credible reports that the TGE had increased violence against low-level AAPO supporters like Wondimu. The Board also noted that Amharas were participating in the government, and that in 1994 three cabinet members (the Prime Minister, the Minister of Justice, and the Attorney General) were Amharas. Finally, the Board held that the documentary evidence submitted by Wondimu only supported a finding that AAPO leadership was being oppressed.

---

Refugee Status. *See* 65 Fed. Reg. 76121, 76127 (Dec. 6, 2000). The INS intended this change to expand the scope of the inquiry to include changes in the petitioner's life as well as changes in the circumstances in the country. *Id*. Nevertheless, Wondimu cannot take advantage of this newer language. The regulation does not purport to be retroactive, and should not be applied to a hearing that occurred before it took effect. *See Ladha v. INS*, 215 F.3d 889, 898 (9th Cir. 2000) (applying the version of 8 C.F.R. § 208.13(a) in existence at the time of the hearing before the immigration judge); *see generally Bowen v. Georgetown Univ. Hosp.*, 109 S.Ct. 468, 471-72 (1988) (discussing presumption against and requirements for retroactivity of administrative regulations).

We hold that no substantial evidence supports the Board's finding. The Board must ask whether "since the time the persecution occurred conditions in the applicant's country . . . have changed to such an extent that the applicant no longer has a well-founded fear." 8 C.F.R. § 208.13(b)(1)(i) (2000). That is, the INS must rebut the presumption of a future fear of persecution by providing evidence that conditions in the country have "changed" -- more specifically, that conditions have changed for the better. While the evidence cited by the Board may show that conditions in Ethiopia were not as bad as Wondimu claimed, that merely casts doubt on Wondimu's veracity and does not show that conditions in Ethiopia changed, much less that conditions improved. Only one item cited by the Board even deals with *changed* conditions, and it merely said that the TGE had not "*increased* violence against low-level AAPO supporters" (emphasis added). This proves that conditions hadn't worsened by 1995, but it fails to prove the converse: that conditions have improved such that Wondimu should have no fear of returning. On their face, the facts cited by the Board fail to support its order.

Neither can we independently find substantial evidence in the record. The December 1994 and June 1995 State Department reports relied upon by the Board do indeed say that conditions under the TGE are a "vast improvement" over the prior Mengistu regime. United States Department of State, *Ethiopia: Profile of Asylum*

9

*Claims and Country Conditions* 5 (June 1995).  That fact is irrelevant, however, because the regulation focuses solely on changes occurring "since the time the persecution occurred."  *See* 8 C.F.R. § 208.13(b)(1)(i) (2000).  The Mengistu regime had been out of power for nearly three years by March 23, 1994, when Wondimu was kidnapped and detained until June 1994.[4]  The relevant question must therefore be whether the TGE's treatment of AAPO members improved after that date.  Given this focus, the State Department reports greatly support Wondimu's case over that of the INS.  The December 1994 State Department report explains that the TGE was increasingly intolerant of political dissent.  *See* United States Department of State, *Ethiopia: Profile of Asylum Claims and Country Conditions* 3-4 (December 1994).  Moreover, the report noted that "AAPO appeared in July, 1994 to be under increasing pressure from the government" and the ability of AAPO members and officials to "live and work without harassment . . . may now be changing, as the TGE steps up its pressure on AAPO."  *Id*. at 7.  The report also takes a mixed view of political diversity, noting that the 1994 campaigning was generally fair yet the major opposition parties

---

[4] The case thus stands in contrast to *Woldemeskel v. INS*, 257 F.3d 1185 (10th Cir. 2001), in which the Ethiopian petitioner requested asylum based in large part on her treatment by the Mengistu regime. *See id*. at 1190.  Once the presumption of future persecution was countered by the evidence of changes since the fall of the Mengistu regime, the petitioner was required to establish refugee status due to the actions of the TGE alone.  *Id*.  She failed to do so.  *Id*.

boycotted the election and other independent candidates failed to make a strong showing. *Id*. at 9. Taken as a whole, the December 1994 report suggests that conditions for AAPO members like Wondimu were getting worse since June 1994 and clearly does not support the view that they were improving.

The June 1995 State Department report offers a similar picture of Ethiopia. The report largely reprints the opinions of the December 1994 report, although it adds a discussion about a failed series of political negotiations. *See* United States Department of State, *Ethiopia: Profile of Asylum Claims and Country Conditions* 8 (June 1995). The report also discusses the campaigning by independent candidates, although this time the State Department characterized these activities as proof that the "TGE's tolerance of diverse political views has slowly been increasing." *Id*. at 12. This positive characterization represents the only evidence that conditions for AAPO members improved from June 1994 to 1995, but this evidence is undermined by the State Department's more guarded opinion of the same events in its December 1994 report. Given the State Department evidence that conditions were getting worse for the AAPO, and the equivocal nature of the only evidence to the contrary, we find that no significant evidence supports the Board's findings.

The BIA did not decide whether Wondimu had carried his burden of establishing past persecution. We therefore vacate the decision

11

of the Board of Immigration Appeals and remand for further proceedings. In doing so, we stress that we express no opinion on whether Wondimu has established past persecution. We also stress that our opinion is based only on the evidence currently in the record, mindful that other evidence may prove that conditions have indeed improved in Ethiopia since June 1994. The Board has the power to administratively notice "commonly acknowledged facts and technical or scientific facts that are within the agency's area of expertise." *Rivera-Cruz v. INS*, 948 F.2d 962, 967 (5th Cir. 1991) (some punctuation omitted). If it wishes, the Board may use this power on remand to introduce additional evidence of changed country conditions. *Id.; see also Faddoul v. INS*, 37 F.3d 185, 190-91 (5th Cir. 1994) (examining *Rivera-Cruz*). If the Board does so, Wondimu must be afforded the right to respond to these facts and introduce additional evidence of his own through a timely motion to reopen. *See Rivera-Cruz*, 948 F.2d at 968; *Faddoul*, 37 F.3d at 190-91.[5] If

---

[5] The circuits are split on the proper procedure for implementing this requirement of due process. Three circuits reached the same result we did. *See Kaczmarczyk v. INS*, 933 F.2d 588, 597 (7th Cir. 1991); *Gebremichael v. INS*, 10 F.3d 28, 38-39 (1st Cir. 1993); *Gutierrez-Rogue v. INS*, 954 F.2d 769, 773 (D.C. Cir. 1992). Another circuit has not gone quite so far, but may indirectly agree. *See Francois v. INS*, 283 F.3d 926 (8th Cir. 2002). On the other hand, two circuits have held that due process requires the INS to give the alien *advance* notice of the evidence and the opportunity to rebut it at the hearing, reasoning that the INS could deport the petitioner before a motion to reopen is heard. *See de la Llana-Castellon v. INS*, 16 F.3d 1093, 1099-1100 (10th Cir. 1994); *Castillo-Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992). The concern may have some validity. Because the petitioner is not guaranteed a stay of deportation pending the hearing and

the Board denies such a motion to reopen on Wondimu's part, he may appeal that denial to this court. *Rivera-Cruz*, 948 F.2d at 968-69. Because we vacate the order of the Board of Immigration Appeals, we need not address Wondimu's other two points of error on appeal.

## Conclusion

Though the BIA held that Wondimu no longer had a well-founded fear of future persecution due to changed conditions in Ethiopia, neither the evidence they cite nor the other evidence in the record supports their conclusion. Because the BIA did not decide whether Wondimu suffered past persecution, we vacate and remand. In doing so, we reiterate that we express no opinion on the past persecution claim or on any evidence outside the record.

VACATED AND REMANDED.

---

appeal of the motion to reopen, "[v]indication of an applicant's procedural rights thus depends on the good faith of the Board in handling the motion to reopen." *Gebremichael*, 10 F.3d at 39 n.29.