# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2021

Lyle W. Cayce
Clerk

No. 19-60074

Billy Alexander Diaz, *also known as* Villi Alexander Flores Diaz,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A071 773 952

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:*

Petitioner Billy Alexander Diaz, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' (BIA) order upholding the Immigration Judge's (IJ) decision to deny Diaz's deferral of

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

removal under the Convention Against Torture (CAT).  We DENY the petition for review.

## I.

Diaz first entered the United States as a minor with his mother and brother in 1991.  In 1994, Diaz was granted voluntary departure when his family's applications for asylum and withholding of removal were denied, but he did not depart and remained illegally in the United States.  During this time, Diaz was separately convicted of the attempted sale of cocaine and the sale of cocaine.  Accordingly, in 2008, Diaz was removed from the United States and returned to El Salvador.

Six years after his return to El Salvador, Diaz allegedly witnessed two men in police uniforms shoot and kill three individuals in a taxi.  Before retreating, the two shooters "stare[d]" at Diaz in a menacing fashion.  About ten days later, three men in police uniforms arrived at Diaz's home.  After ordering Diaz to let them in, the men beat Diaz, searched his house, put a gun to his head, and told him that he "had to disappear from there, leave the country and never go back."  The men also inspected Diaz's body for gang tattoos and confiscated his El Salvadoran national ID card.  Diaz did not report to the police either this attack or the murder that he witnessed for fear of reprisal.  The day after the attack, Diaz fled El Salvador.  He entered the United States illegally at Eagle Pass, TX, just over a year later, and was apprehended near Carrizo Springs, TX three days after his arrival.

Shortly thereafter, the 2008 order of removal against Diaz was restored, prompting Diaz to move for withholding of removal under 8 U.S.C. § 1231(b)(3) and deferral of removal under the CAT.  In addition to his own testimony, Diaz provided letters from his wife and a friend back in El Salvador, along with a newspaper article about the shooting, all purporting to show that the police were responsible for both the shooting and Diaz's assault.  Despite finding that Diaz was a credible witness, the IJ denied deferral of removal and ruled that Diaz's drug conviction prohibited

withholding of removal. On appeal, the BIA remanded "for supplemental fact-finding" for more meaningful review.

On remand, Diaz presented additional evidence. This included the testimony of Robert Kirkland, a professor of Latin American affairs and retired U.S. Army lieutenant colonel; the State Department's 2016 and 2017 Human Rights Reports on El Salvador; and two articles by the Washington Office on Latin America, a research and advocacy organization. The IJ again denied relief because Diaz did not prove that the shooters or his assailants were police officers, or that the two events were connected. In particular, the newspaper article identified the shooters as "gang member[s]"—a major discrepancy with Diaz's claim. The letters from Diaz's friend and wife also failed to show that his assailants were police officers. Because Diaz failed to corroborate these claims, the IJ ruled that Diaz failed to show that it was more likely than not he would be subjected to torture by state action upon return to El Salvador. Diaz appealed under the CAT and the BIA affirmed. Diaz appealed to this court.

## II.

Typically, we may review only the BIA's order. *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997). But if the BIA adopts the IJ's findings and conclusions, we may review the IJ's order too. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Because the BIA adopted much of the IJ's analysis, we may review the IJ's order here.

We review the BIA's legal determinations *de novo*, with deference to the BIA. *Vasquez-Martinez v. Holder*, 564 F.3d 712, 715 (5th Cir. 2009). We review factual findings to ensure they are supported by substantial evidence. *Mikhael*, 115 F.3d at 302. Factual findings are not supported by substantial evidence only if the facts are "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* (quoting *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 483–84 (1992)).

III.

To succeed on a claim under the CAT, the petitioner must show "a likelihood of torture upon return [home]." *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350 (5th Cir. 2006). Importantly, the torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Chen v. Gonzales*, 470 F.3d 1131, 1141 (5th Cir. 2006) (quoting 8 C.F.R. § 208.18(a)(1)). Diaz must prove that: (1) it is more likely than not that he will be tortured upon return home; and (2) there is "sufficient state action involved in that torture." *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014); *see* 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1).

A.

Before assessing the merits, we must discuss jurisdiction. 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain criminal offenses]." But the Supreme Court has ruled recently that a CAT order is not a *final* order of removal. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020). Therefore, even if Diaz did commit the criminal offenses specified in § 1252(a)(2)(C) and we would otherwise not have jurisdiction, we do have jurisdiction because this is not a final order of removal.

B.

Diaz has the burden of proof for establishing that he satisfies the requirements for relief from removal. 8 U.S.C. § 1229a(c)(4)(A)(i). To meet this burden, the petitioner must show that he "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] has satisfied [his] burden of proof." *Id.* § 1229a(c)(4)(B). Even if Diaz meets this burden, the IJ can request corroborating evidence. *Id.* Diaz must provide that evidence unless he can prove that it cannot be reasonably obtained. *Id.*

Here, although the IJ found Diaz to be credible, it required corroborating evidence because of inconsistencies in his testimony, which Diaz failed to provide.  Diaz claimed the shooters were police officers and that his assailants were also police officers (who knew he witnessed the shooting).  But the newspaper article that Diaz submitted stated otherwise. The article indicated that the shooting was a "quarrel between gangs" and that at least one of the victims was a gang member.  Diaz claimed that the newspaper blamed gangs by default.  Further, Diaz claimed that the shooters "stared" at him from "a little bit far away," but it is not clear how the shooters would know how to find him.  Diaz claimed that he lived in a small town, so the shooters could easily ask around. But that contradicts Diaz's claim that he did not tell anyone about the shooting, including the police.

It is also not clear that the shooters were the same individuals as Diaz's assailants (or that they even knew that he witnessed the shooting). It is possible that both incidents involved police officers, as Diaz claimed. But it is also possible that both incidents involved only gang members. The assailants purportedly told Diaz that he knew why they were there, but they gave no motive aside from this opaque statement.  If Diaz's assailants were police officers, it is unclear why they waited a week and a half to threaten him, or why they checked his body for gang-related tattoos.

The letters from Diaz's wife and friend did not corroborate his claims either. These letters specifically refer to the "vermin" (gang members) as distinct from the police: "[Y]ou can't even go to another neighborhood without the vermin stopping and checking you as if they are the police . . ." and "Problems happen and the police arrive once they [the gang members] have left . . . ."  These letters further describe the individuals as "suspects" or refer to the "suspicious types" looking for Diaz, but never refer to the police.

So there are discrepancies between the evidence Diaz presented and his claims about the identity of the shooters and his assailants.  Because of

these discrepancies, the IJ ruled that Diaz failed to corroborate three claims: that (1) his assailants knew he witnessed the taxi shooting, (2) his assailants were able to identify him and find his home, and (3) his assailants were police officers.

Diaz argued before the BIA and before us that he was not given the opportunity to show that he could not reasonably obtain corroborating evidence for any of these discrepancies, but the record indicates otherwise. When the IJ requires corroborating evidence and the petitioner fails to provide it, the BIA has explained that the IJ must give the petitioner "an opportunity to explain why he could not reasonably obtain such evidence . . . ." *Avelar-Oliva v. Barr*, 954 F.3d 757, 770 (5th Cir. 2020) (quoting *Matter of L-A-C-*, 26 I. & N. Dec. 516, 521 (BIA 2015)). Diaz attempted to corroborate the claim that his assailants were able to identify him and find his home: he maintained that he lived in a small town and that the assailants could ask around for his location. And Diaz otherwise argued that he could not reasonably corroborate his other claims. The IJ even specified the three things that Diaz had to corroborate, despite having no obligation to do so, 8 U.S.C. § 1229a(c)(4)(B), yet Diaz declined to give further testimony on remand. Diaz, therefore, failed to establish that the IJ refused to give him an opportunity to present corroborating evidence.

Alternatively, Diaz argued that he could not have reasonably obtained corroborating evidence, but the record again indicates otherwise. Diaz maintained that it would not be reasonable for him to explain how his assailants identified him and found his home, or to track down and identify those assailants as police officers. But Diaz did not need to explain the method his assailants used to locate him. Rather, he needed to show the connection between the shooters and his assailants. And Diaz did not have to "seek the cooperation of the very forces he [was] fleeing" to corroborate their identities.

Last, although Diaz claimed that the BIA ignored essential corroborating evidence, it did not. The BIA's decision must "reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel-Masieh v. U.S. I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996) (citing *Ramos v. I.N.S.*, 695 F.2d 181, 188 (5th Cir. 1983)). Diaz argued that the IJ and BIA ignored the expert testimony and State Department reports that Diaz presented on remand. But the BIA is not required to "specifically address every piece of evidence put before it." *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018) (quoting *Abdel-Masieh*, 73 F.3d at 585). "Meaningful consideration" does not require the BIA to "address evidentiary minutiae or write any lengthy exegesis" on each of the petitioner's claims. *Abdel-Masieh*, 73 F.3d at 585 (citing *Ramos*, 695 F.2d at 189).

Here, the IJ held that even if Diaz's expert testimony is true, there is insufficient evidence to show that the assailants are still targeting Diaz. The IJ also held that the expert did not adequately explain how Diaz's assailants could track him down through his El Salvadoran national ID card. Further, the IJ recognized the pervasive government corruption in El Salvador, yet concluded that general corruption did not bear on whether public officials are searching for Diaz specifically. The BIA adopted these holdings. The BIA may not have addressed every piece of evidence presented by Diaz, but it was not required to do so. The BIA did, however, meet its burden by giving "meaningful consideration" to Diaz's expert testimony and State Department reports. Substantial evidence supports the BIA's decision that Diaz failed to corroborate his claim.

\*            \*            \*

For the reasons above, we DENY Diaz's petition for review.