United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 02-60449

———————————

ZEBA MOIN, et al,

Petitioners

v

JOHN ASHCROFT, U. S. Attorney General,

Respondent

———————————

Petition For Review of an Order

of the Board of Immigration Appeals

———————————

Before JONES, BENAVIDES, Circuit Judges, and KAZEN, Chief District Judge.[1]

KAZEN, Chief District Judge:

Zeba Moin and her minor son, Moiz Ullah, appeal the ruling of the Board of Immigration

Appeals (BIA), which affirmed an immigration judge's holding that Zeba Moin abandoned her

lawful permanent resident status and is, therefore, an inadmissible alien subject to exclusion and

---

[1] Chief District Judge of the Southern District of Texas, sitting by designation.

deportation.[2]  We AFFIRM.

## I.

In August 1991, Zeba Moin, a native and citizen of Pakistan, was lawfully admitted for permanent residence in the United States as the unmarried daughter of a permanent resident father.[3]  Two months later, in October 1991, she left this country to return to Pakistan.  Over the next fifty-four months, Moin made several trips between the two countries.  During that period, her total stay in this country was approximately six months.  On February 2, 1996, Moin returned to the United States from her latest trip, accompanied by her son, Moiz Ullah.  She had left Pakistan on a round-trip airline ticket with a return date of May 29, 1996.  Upon her arrival in the United States, she presented her permanent resident card and Pakistani passport to the primary immigration officer at Houston Intercontinental Airport.  She was then referred to secondary inspection to process her son for admission.  The secondary officer deferred her inspection to the INS Houston District Office because of the length of time she had spent outside the United States.  An INS inspector ultimately concluded that Moin had abandoned her status as a lawful permanent resident and was therefore inadmissible to the United States.  After hearing several days of testimony from the INS inspector, Moin, and Moin's family, an immigration judge agreed that Moin had abandoned her lawful permanent resident status in October 1991 and ordered Moin and her son excluded and deported from the United States.  This order was affirmed by a single member of the BIA, without opinion, in May of 2002.  This timely petition for review followed.

---

[2] Ullah's status as a lawful permanent resident, without a formal visa, is derived from his mother's status as a permanent resident alien.  Therefore, if Moin loses her status as a permanent resident, so too would Ullah.

[3]  Moin's mother is also a permanent resident; however, Moin's admission into the United States was apparently based solely on her father's status.   Moin's father has since become a United States citizen.

II.

Although this Court generally reviews decisions of the BIA, not immigration judges, it may review an immigration judge's decision when, as here, the BIA affirms without additional explanation. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). In either case, this Court must affirm the decision if there is no error of law and if reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings. *See Howard v. INS*, 930 F.2d 432, 434 (5th Cir. 1991). Conclusions regarding an alien's intent are essentially factual and are reviewed for substantial evidence. *See Chavez-Ramirez v. INS*, 792 F.2d 932, 934-35 (9th Cir. 1986). This Court will not reverse a BIA decision unless the petitioner provides evidence "so compelling that no reasonable fact-finder could conclude against it." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996); *see also INS v. Elias-Zacarias*, 112 S.Ct. 812, 817 (1992).

Moin argues that this standard of review is too deferential to the BIA in this case, because the BIA issued no opinion and review was conducted by only one member of the Board.[4] Instead, Moin asks this Court to formulate some "new, less deferential standard of review" in such cases, but she offers no authority for that request nor does she articulate a proposed standard. The Administrative Procedure Act, as a general proposition, mandates substantial evidence review of administrative agency fact findings, and at least one circuit has applied the substantial evidence standard where the BIA's streamlined procedures were used. *See* 5 U.S.C. § 706; *Albathani v.*

---

[4] In *Soadjede v. Ashcroft*, 324 F.3d 830 (5th Cir. 2003), this Court held that BIA's streamlined procedures, which allow for single member of the BIA to summarily affirm an immigration judge's opinion, do not violate the due process rights of aliens.

*INS*, 318 F.3d 365 (1st Cir. 2003).[5]  Further, given that the substantial evidence test requires review of the entire administrative record, irrespective of whether or not BIA issued an opinion, we see no reason to apply any other standard in this case.

III.

The issue of whether or not an alien has abandoned her lawful permanent resident status is one of first impression in this circuit, but decisions of the BIA and sister circuits give guidance. "[T]o qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with our laws, must have retained that status from the time that [she] acquired it, and must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." *Matter of Huang*, 19 I. & N. Dec. 749, 753 (BIA 1988) (internal quotation marks and citations omitted).  The instant case turns on whether Moin's extended trips to Pakistan constituted "temporary visits abroad."

> "Temporary" in this context is not merely an antonym of "permanent."  A trip is a "temporary visit abroad" if (a) it is for a "relatively short period, fixed by some early event; or (b) the trip will terminate upon the occurrence of an event that has a reasonable possibility of occurring within a relatively short period of time.

*Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997); *see also Ahmed v. Ashcroft*, 286 F.3d 611, 613 (2d Cir. 2002) (per curiam).

Moin argues that her trips to Pakistan were "temporary visits abroad" for two reasons. First, she notes that no trip exceeded two years, and she obtained a reentry permit valid for two years. However, "temporary visits" are not defined in terms of elapsed time alone.  *See Ahmed*,

---

[5] In *Albathani*, the First Circuit reviewed, under a substantial evidence standard, the denial of petitioner's application for asylum, which was affirmed without opinion by one member of the BIA.

286 F.3d at 613; *Huang*, 19 I. & N. Dec. at 753. Also, a reentry permit, in and of itself, does not prevent a finding that an alien has abandoned her permanent residency status. "A reentry permit does not guarantee [an alien's] return if he or she is found inadmissible on seeking reentry." 3 Gordon and Mailman, *Immigration Law and Procedure*, § 35.02[1]. A reentry permit merely serves as evidence of an alien's intent to return, which the Government may refute by clear, unequivocal, and convincing evidence. *Id.* at § 35.02[3]. Moin cites *Saxbe v. Bustos*, 95 S.Ct. 272, 277-278 (1974), for the proposition that an alien granted permanent residency status has the privilege of living in this country but is not required to do so. *Saxbe*, however, involved alien commuters who lived abroad but would return to the United States to work, either on a daily or seasonal basis. *Id.* at 278. Unlike Moin, they were returning regularly to the United States after short visits abroad, with their return triggered by some identifiable event, *i.e.* the need to return to work at some determinable time. Alien commuters have established business affiliations in the United States that demonstrate their "intent to return...within a relatively short period." *Singh*, 113 F.3d at 1514. Moin has no such affiliations, and her various returns to the United States from Pakistan were not linked to any identifiable triggering event occurring within a reasonably short time frame.

Second, Moin argues that she always intended to reside permanently in the United States. "The relevant intent, [however], is not the intent to return ultimately, but the intent to return to the United States within a relatively short period." *Singh*, 113 F.3d at 1514. "Factors to be considered in evaluating the intent of the alien include: the alien's family ties, property holdings, and business affiliations within the United States, and the alien's family, property, and business ties in the foreign country." *Id.* at 1514-1515. An applicant's desire to maintain her status as a

5

permanent resident, without more, is insufficient; the alien's intent must be supported by her actions. *Id.* at 1514-15.

IV.

The immigration judge concluded from the *Singh* factors that Moin demonstrated a lack of intent to return to the United States within a relatively short time after her various absences. He based that conclusion on the following evidence.

In October 1991, two months after arriving in this country, Moin returned to Pakistan at her parents' urging, to consider several marriage proposals and obtain a husband. She expressed an intent to be away from the United States for only a few months, but instead stayed in Pakistan almost a year. While in Pakistan, Moin soon married Mohammad Rashid. The wedding ceremony and related cultural events extended for a period of three months. Moin's stay in Pakistan was further extended when she became pregnant with her first child, born September 6, 1992. She remained in Pakistan throughout the pregnancy because she was occasionally sick and because her husband was not able to come with her to the United States. Moin finally returned to this country in October 1992, leaving her husband and newborn child in Pakistan. Here, she filed a visa petition for her husband and obtained a re-entry permit for herself that was valid for two years. Approximately two months later, in December 1992, she returned to Pakistan because her husband asked that she do so to care for her child, who was ill. The child ultimately died in October 1993. Moin did not return to the United States until November 1994, explaining that she had become emotionally distraught following the death of her child and that her doctors had advised her not to travel. She ultimately returned to the United States shortly before her re-entry permit was to expire. Moin stayed in this country for approximately two more months and then

left again on February 1, 1995, after receiving telephone calls from her husband, expressing his loneliness and desire that she return. She had intended to stay in Pakistan only a month or two but actually stayed until February of 1996. In the meanwhile, she became pregnant with her second child, Moiz Ullah, who was born on November 9, 1995. She claimed that this second child was also sickly, which required her to wait three months after his birth before returning to the United States.

The evidence also reflected that Moin lived with her parents most of the time that she was in this country, with one short stay at a brother's house. Moin had only a few personal items at her parents' home and owned no real property in the United States. She had no verified employment, although she claimed to have performed some brief babysitting chores, and she had paid no income taxes in the United States. During the same time period, Moin was listed as joint owner with her husband of two shops and an apartment in Pakistan; her husband purchased a car for her in Pakistan; and her husband bought a home in Pakistan while Moin was in the United States. Further, although Moin initially entered the United States in 1991 on a one-way airline ticket, her later entries were always with round-trip tickets, including the last entry in February of 1996. Moreover, the immigration judge noted evidence that, in the Pakistani culture, a wife is expected to abide by her husband's wishes, and it is unacceptable for a wife to live apart from her husband absent extraordinary circumstances. The immigration judge also expressed concern over the lack of documentation as to the nature and extent of the illnesses of both children. Finally, he perceived certain inconsistencies between the testimony of Moin and her relatives, and also between her testimony and her earlier sworn statement given to immigration officials.

V.

In sum, the immigration judge concluded that, very shortly after obtaining permanent resident status in this country, Moin returned to her native land under direction of her parents to marry, did marry, and then spent the overwhelming majority of the next several years in Pakistan, attending to her husband and children. He recognized that Moin wanted to preserve her permanent resident status, but her various trips to Pakistan were never for relatively short periods, fixed by particular events likely to occur within a relatively short time frame. On the contrary, he drew from the evidence the picture of a person living in Pakistan while taking a few rather short trips to the United States.[6]

We appreciate the predicament which confronts immigrants who marry non-citizens abroad. Because temporary visas are often unavailable and processing marital visas may take years, they must choose to live apart or risk losing their permanent resident status. *See Singh*, 113 F.3d at 1516 (Reinhardt, dissenting). Moin's situation was especially problematical because of her pregnancies. We also do not necessarily endorse all of the immigration judge's findings. We are particularly troubled by his skepticism as to the seriousness of the first child's illness, protesting a lack of documentation, even though the child died after barely one year. Nevertheless, we must be guided by the totality of the record and not any single finding. From

---

[6] Moin takes issue with the immigration judge's conclusion that she abandoned her status as a lawful permanent resident as of October of 1991. She argues that if this conclusion is correct, it would follow that she should have been placed in exclusion proceedings upon her return to the United States in October 1992; the INS should not have issued her a reentry permit in December 1992; she should not have been permitted to reenter on the permit in November 1994; and the American Consulate in Pakistan should not have issued her husband a visa to join her in the United States in July 1996. While this argument has a superficial appeal, the issue in this case is not how long it took the INS to realize that Moin never possessed the requisite intent to maintain her permanent resident status. Instead, the issue is the legitimacy of Moin's original expression of intent to permanently reside in this country, viewed in the light of her subsequent conduct over several years.

that perspective, we cannot say that the evidence is so compelling in Moin's favor that no

reasonable person could have made the same findings and conclusions as the immigration judge.

We, therefore, AFFIRM the decision of the Board of Immigration Appeals.

AFFIRMED