United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-60097

_____


IDRISSA DIARRA

                    Petitioner

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

                    Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A75 221 863

_____

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit
Judges.

PER CURIAM:[*]

     Petitioner Idrissa Diarra, a citizen and native of Guinea,

was found to be a removable alien by a United States immigration

court in 2001.  Subsequently, the Board of Immigration Appeals

affirmed this decision.  Diarra now petitions for review of the

decision of the Board of Immigration Appeals, arguing that: (1)

he was improperly classified as an "arriving alien"; (2) his

request for a continuance to pursue his adjustment of status

---

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

application was improperly denied; and (3) his request for cancellation of removal should have been granted. For the following reasons, we DISMISS in part and DENY in part the petition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Diarra entered the United States for the first time in 1989 as a nonimmigrant visitor. He overstayed his visa and, on April 9, 1996, applied for an adjustment of status with the Immigration and Naturalization Service ("INS").[1] While his application was pending, Diarra left the United States on two occasions, both pursuant to an authorization of advance parole from the INS. First, he was out of the country from October 10, 1996 until January 30, 1997. Second, he was out of the country from July 29, 1997 until April 25, 1998. The I-512 advance parole document that Diarra received from the INS stated:

> Subject has application for "permanent residence" pending in the Houston District Office. Note: This authorization will permit you to resume your application for adjustment of status on your return to the United States.

While Diarra was out of the country, the INS invited him on three occasions to an adjustment interview. He claims not to have received the invitations, and he did not respond to them. Accordingly, his application for adjustment of status was denied.

---

[1] The INS ceased to exist on March 1, 2003, and the Department of Homeland Security now performs its functions. Since the events relevant to Diarra's petition occurred before the INS's dissolution, we will refer to the agency as the "INS."

Subsequently, on May 15, 2001 (after Diarra had returned to the United States for the second time), the INS served him with a Notice to Appear ("NTA") that charged him with being an arriving alien subject to removal. On May 18, 2001, the INS commenced removal proceedings against Diarra in Houston.

On November 20, 2001, a removal hearing was held in Houston immigration court. At the hearing, Diarra denied being an "arriving alien" but admitted to having no valid entry document. The immigration court held that Diarra was removable. Diarra then filed a motion asking that the proceedings be continued because his new wife, a lawful permanent resident whom he married twelve days before the hearing, had filed an I-130 visa petition on his behalf.[2] Because the immigration judge found Diarra to be an arriving alien, it held that he could not apply for an adjustment of status and, accordingly, denied his request for a continuance.

At a subsequent hearing on January 29, 2002, Diarra asked the immigration court for permission to apply for cancellation of removal.[3] On August 26, 2002, Diarra testified in support of his

---

[2]     This was Diarra's second marriage. His first marriage was the subject of his previous adjustment of status application that was denied.

[3]     The Attorney General has discretion to cancel a non-permanent resident's removal if the alien demonstrates: (1) ten years of continuous presence; (2) good moral character; (3) a lack of certain criminal convictions; and (4) exceptional and extremely unusual hardship to a qualifying relative. 8 U.S.C. § 1229b(b)(2000).

request for cancellation. The immigration judge denied his application, finding that Diarra had failed to establish: (1) ten years of physical presence in the United States (because of his two absences); and (2) an exceptional and extremely unusual hardship to a qualifying relative. Diarra was then granted a voluntary departure, and he appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA").

On January 14, 2004, the BIA, without issuing a written opinion, affirmed the immigration judge's decision. Diarra subsequently filed the instant petition for review.

## II. STANDARD OF REVIEW

"Although this Court generally reviews decisions of the BIA, not immigration judges, it may review an immigration judge's decision when, as here, the BIA affirms without additional explanation." Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003). "[T]his Court must affirm the decision if there is no error of law and if reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings." Id.

## III. ANALYSIS

### A. Diarra's Designation As an "Arriving Alien"

Diarra first argues that he should not have been classified as an "arriving alien" because his travel was pursuant to a grant of advance parole. Diarra notes that his I-512 states that he

4

had an application for adjustment of status pending, and it explicitly permitted him to resume his application upon his return to the United States. Thus, he argues that this advance parole document authorized him to take back the status he left when he applied for parole and to resume his adjustment application. Diarra also invites this court's attention to <u>Joshi v. Immigration and Naturalization Service</u>, 720 F.2d 799, 803-04 (4th Cir. 1983). Diarra states that the petitioner in <u>Joshi</u>, like Diarra, entered the United States lawfully as a nonimmigrant, filed an adjustment of status application, and traveled out of the country pursuant to a grant of advance parole. According to Diarra, the Fourth Circuit held that Joshi was not an "arriving alien" when he returned to the United States. Diarra argues that this court should similarly find that he is not an "arriving alien."

Diarra was clearly an "arriving alien." Under 8 C.F.R. § 1.1(q):

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the [INA], except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the [INA].

5

Because Diarra was last paroled into the country after April 1, 1997, and because § 235(b)(1)(A)(i) of the INA (providing for expedited removal) is not at issue in this case, Diarra falls within the definition of an "arriving alien." See id. Diarra's reliance on Joshi for a contrary result is misplaced. First, Joshi is not binding precedent in this circuit. Second, Joshi was decided over twenty years ago, more than a decade before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). In Joshi, the Fourth Circuit applied the Fleuti doctrine, under which an alien is not considered to have "entered" the United States, pursuant to the former 8 U.S.C. § 1101(a)(1), if his departure from the United States was an "innocent, casual, and brief excursion." See Joshi, 720 F.2d at 801; see also Rosenberg v. Fleuti, 374 U.S. 449, 462 (1963). The IIRIRA, however, replaced the term "entry" with the terms "admission" and "admitted," which are defined as:

> with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. (B) An alien who is paroled under section 212(d)(5) . . . shall not be considered to have been admitted.

8 U.S.C. § 1101(a)(13)(A), (B); see also Zalawadia v. Ashcroft, 371 F.3d 292, 294-95 & n.3. Thus, under the law as it now exists, Diarra, who was paroled into the United States, is by definition an "arriving alien." See 8 U.S.C. § 1101(a)(13)(A); 8 C.F.R. § 1.1(q). Accordingly, the immigration court's

6

determination that Diarra was an "arriving alien" was supported by substantial evidence, and Diarra's petition is denied insofar as it pertains to his classification as an "arriving alien."

## B.   Diarra's Motion for a Continuance

Diarra next argues that it was error for the immigration court to deny his request to continue his case to allow the INS to adjudicate the I-130 Petition for Alien Relative filed by his new wife.  Diarra notes that at the time she filed this application, she was a lawful permanent resident with a pending Application for Naturalization.  Diarra claims that the immigration judge wrongly denied him the opportunity to pursue his application for adjustment of status predicated on this petition.  In support of this argument, he notes that his I-512 advance parole document specifically allowed him to resume his application for adjustment of status upon his return to the United States.  Additionally, in a supplemental letter brief, he invites the court's attention to a recent First Circuit case, Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005), in which the First Circuit allowed an alien in removal proceedings to apply for an adjustment of status.

Diarra's contention that he should have been permitted to pursue his application for adjustment of status before the immigration court fails.  First, the I-512 advance parole document provided only that Diarra would be permitted to pursue

7

his application for adjustment of status that was pending at the time he was granted advance parole, i.e., the application based on his first marriage. See 8 C.F.R. § 245.2(a)(1). This application, however, had already been denied, and Diarra was not attempting to renew it before the immigration court. Rather, Diarra was attempting to pursue a different application for adjustment of status based upon his second marriage. Accordingly, his claim that the I-512 allowed him to pursue this application for adjustment of status fails.

With respect to Diarra's citation to Succar, we need not address this argument because it is waived. Under 8 C.F.R. § 245.1(c)(8), an arriving alien in removal proceedings is prohibited from applying for an adjustment of status. In Succar, the petitioner challenged the validity of § 245.1(c)(8), and the First Circuit held that § 245.1(c)(8) was invalid. Succar, 394 F.3d at 36. This circuit, however, has not held that § 245.1(c)(8) is invalid, and Succar is not binding precedent here.[4] Moreover, unlike the petitioner in Succar, Diarra never

_____

[4] The only Fifth Circuit case to mention § 245.1(c)(8) is Doria v. Ashcroft, No. 03-60383, 2004 WL 1161837, at *1 (5th Cir. May 25, 2004) (per curiam) (unpublished). In Doria, the court cited 8 C.F.R. § 245.1(c)(8) and held that "[b]ecause Doria's second adjustment application was not filed until after he had been paroled into the United States and removal proceedings had been instituted, the [immigration judge] was correct in concluding that he was not permitted to renew his adjustment application . . . ." Doria, 2004 WL 1161837, at *1. Similarly, again citing § 245.1(c)(8), the court stated that Doria "is ineligible for adjustment of status as a result of his status as an arriving alien in removal proceedings." Id. at *2.

challenged the validity of § 245.1(c)(8) before the immigration court or in his petition for review to this court. In fact, Diarra never mentioned § 245.1(c)(8) in his petition for review. After briefing was completed in this case, the government requested the opportunity to address Succar in a supplemental letter brief. Only then did Diarra, in a supplemental letter brief of his own, claim that § 245.1(c)(8) is invalid. However, under FED. R. APP. P. 28(a)(9)(A), an appellant's brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Likewise, we have consistently held that issues that are not clearly designated in the appellant's initial brief are normally deemed abandoned. See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 445 (5th Cir. 2000) ("Generally, we deem abandoned those issues not presented and argued in an appellant's initial brief, nor do we consider matters not presented to the trial court."). Thus, because Diarra did not challenge § 245.1(c)(8) in his petition for review, we consider his challenge waived.[5] Accordingly, the

_____

[5] Additionally, as the government notes, Diarra was not even prima facie eligible for an adjustment of status based upon his second marriage because: (1) the visa petition had not been approved by the INS; and (2) even if the visa petition had been approved, no immigrant visa was "immediately available" to him. This follows from the fact that his new wife was only a lawful permanent resident, not a U.S. citizen, and any visa petition she filed would be subject to the numerical limitations of preference visas. See 8 U.S.C. §§ 1151(b)(2)(A)(i) & 1153. Because 8 U.S.C. § 1255(a) states that an alien is only eligible for an adjustment

9

immigration court's denial of Diarra's request for a continuance to pursue his adjustment of status application was supported by substantial evidence, and Diarra's petition with respect to his request for a continuance is denied.

## C.   Diarra's Request for Cancellation of Removal

Finally, Diarra contends that the immigration court erred when it denied his request for cancellation of removal.  First, he contends that the immigration court erred in finding that he lacked ten years of continuous physical presence in the United States, which is a requirement for the cancellation of removal. See 8 U.S.C. § 1229b(b).  Diarra notes that § 1229b(b) states that an alien shall be considered to have failed to maintain physical presence in the United States if he has departed the United States for a single period that exceeds ninety days or for any periods that, in the aggregate, total 180 days.  Diarra argues, however, that the statute is silent with respect to absences pursuant to a grant of advance parole.  He also states that his two absences were compelled by extenuating circumstances (i.e., his father's sickness and death) and were both pursuant to a grant of advance parole.  According to Diarra, he should not be punished for his departures because of the grant of advance parole.

---

of status if "an immigrant visa is immediately available to him at the time his application is filed[,]" Diarra was not prima facie eligible for an adjustment of status.

Second, Diarra states that the immigration court erred in finding that he did not meet the threshold for the exceptional and extremely unusual hardship requirement for cancellation of removal. Diarra argues that this court can review this element of a cancellation of removal claim because it is a legal question, not a discretionary determination. He then contends that he has recently been married and has two stepchildren. According to Diarra, one of his stepchildren has lived his entire life in the United States and the other needs Diarra's help (e.g., to translate his homework from French to English). Diarra claims that returning his stepchildren to Africa would result in a psychological hardship, and he accordingly argues that he has met the "exceptional and extremely unusual hardship" prong.

This court does not have jurisdiction to address Diarra's arguments regarding his request for a cancellation of removal. This follows from the fact that his request for cancellation of removal was pursuant to 8 U.S.C. § 1229b(b). Section 1252(a)(2)(B) of Title 8 of the United States Code provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review--
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), <u>1229b</u>, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

11

8 U.S.C. § 1252(a)(2)(B) (emphasis added).  Because the removal proceedings in this case commenced after the effective date of these statutory restrictions on judicial review (April 1, 1997), § 1252(a)(2)(B) is applicable to the present case.  This provision eliminates jurisdiction over decisions involving the exercise of discretion, as opposed to legal or non-discretionary questions.  Mireles-Valez v. Ashcroft, 349 F.3d 213, 216 (5th Cir. 2003).  This court has held that an immigration court's determination as to the "exceptional and extremely unusual hardship" prong of § 1229b involves the exercise of discretion. Rueda v. Ashcroft, 380 F.3d 831 (5th Cir. 2004).  In Rueda, this court stated that it lacked jurisdiction to address the petitioner's claim that the immigration court erred in finding that the petitioner had failed to demonstrate the requisite hardship for cancellation.  Id. at 831.  Accordingly, Diarra's petition, insofar as it regards a challenge to the hardship determination, is dismissed for lack of jurisdiction.

Additionally, this court need not consider Diarra's argument regarding physical presence because even if he satisfies the physical presence requirement, this court lacks jurisdiction to review the discretionary determination that he failed to meet the hardship requirement.  Romero-Torres v. Ashcroft, 327 F.3d 887, 892 (9th Cir. 2003) (holding that because the court lacked "jurisdiction to review the BIA's discretionary determination that an alien failed to satisfy the 'exceptional and extremely

12

unusual hardship' requirement for cancellation of removal," it would not consider the petitioner's challenge to the court's finding regarding a lack of physical presence); Morales Ventura v. Ashcroft, 348 F.3d 1259, 1262 (10th Cir. 2003) (holding that because the court lacked jurisdiction to review the petitioner's hardship challenge, her challenge regarding her continuous presence became moot).

## IV.  CONCLUSION

For the foregoing reasons, the petition for review is DISMISSED for lack of jurisdiction insofar as it pertains to Diarra's cancellation of removal claim.  The petition is DENIED in all other respects.

13