[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14546
Non-Argument Calendar
_____

Agency Nos. A45-715-344,
A45-715-345

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2009
THOMAS K. KAHN
CLERK

KHALID F. USMANI,
SEEMA R. SIDDIQUI,
SAAD F. USMANI,
FATIMA USMANI,
HASSAN F. USMANI,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 12, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Khalid Usmani, his wife Seema Siddiqui, and their three children, Saad Usmani, Fatima Usmani, and Hassan Usmani, (collectively, the "petitioners"), petition for review of the decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") order finding petitioners removable pursuant to 8 U.S.C. § 1182 (a)(7)(A)(i)(I), because Usmani and his wife abandoned their status as lawful permanent residents ("LPR") of the United States when petitioners were in Pakistan primarily for business purposes from January 2002 through January 2003. On appeal, the petitioners argue that: (1) the IJ's determination that the petitioners had the intent to abandon their status as LPRs of the United States was not supported by substantial evidence and applied the wrong legal standard; and (2) the IJ erred in finding that Usmani's abandonment of his LPR status could be automatically imputed to his wife and children. After careful review, we deny the petition.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA expressly adopted and affirmed the IJ's decision and also provided additional analysis. Thus, we review both decisions.

To the extent that the BIA's or IJ's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d

2

814, 817 (11th Cir. 2004). The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted, alteration in original). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence compels a reasonable fact finder to find otherwise." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (quotation omitted). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

First, we find no merit in the petitioners' argument that substantial evidence does not support the conclusion that the government established by clear, unequivocal, and convincing evidence that petitioners abandoned their LPR status. An LPR is not regarded as seeking an admission each time he or she reenters the United States unless, inter alia, the alien "has abandoned or relinquished [LPR] status" or "has been absent from the United States for a continuous period in excess of 180 days." 8 U.S.C. § 1101(a)(13)(C)(i)-(ii). Any immigrant who, at the time of application for admission, does not possess a valid entry document is inadmissible. 8 U.S.C. § 1182 (a)(7)(A)(i)(I).

In the proceedings before the IJ, the INS had the burden of establishing Usmani's removability by clear and convincing evidence. Bigler v. U.S. Att'y Gen., 451 F.3d 728, 732 (11th Cir. 2006); see also 8 U.S.C. § 1229a(c)(3)(A). "[T]o qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with our laws, must have retained that status from the time that [he] acquired it, and must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." Bigler, 451 F.3d at 733 (quoting Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003) (brackets in original)). "[When] petitioner's absence is not relatively short in duration, petitioner must show 'a continuous, uninterrupted intention to return to the United States during the entirety of his visit.'" Id. (quoting Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997)). "Finally, petitioner's desire to remain a permanent resident, without more, is insufficient to demonstrate his intent; petitioner's intent must be supported by his actions." Id.

Substantial evidence supports the determination that the government met its burden of establishing that the petitioners abandoned their LPR status.[1] Indeed, the

---

[1] We are likewise unpersuaded by the petitioners' argument that the IJ failed to apply the correct legal factors regarding LPR abandonment to the facts. The IJ specifically said, after examining the various factors in determining abandonment of LPR status, that the "[g]overnment sustained its burden of proving by clear, unequivocal, and convincing evidence" that the petitioners had abandoned their LPR status. We recognize that the IJ used a higher standard -- that the government's burden was by "clear, unequivocal, and convincing" evidence -- than the one we usually use -- that the government has the burden of establishing removability by "clear and convincing" evidence, Bigler, 451 F.3d at 732. However, because the government met the

4

petitioners' nearly year long absence from January 2002 until January 2003 was not relatively short in duration. Moreover, although the petitioners argue that their trips to Pakistan were temporary and that they always intended to return to the United States, the objective evidence shows otherwise. In January of 2002, the petitioners returned to Pakistan with the stated expectation of being there for 60 to 90 days while a business merger was being completed. However, petitioners had no realistic reason to believe that the merger would be completed within that time frame because the merger negotiations had been ongoing since 2000 and was dependent on finding financing, which had never come through. Because petitioners thereafter remained in Pakistan for the remainder of 2002 and had return tickets to Pakistan when they arrived in the United States in January 2003, the petitioners did not show a continuous, uninterrupted intention to return to the United States. Id. at 732.

In addition, petitioners had few established connections with the United States despite nearly five years of LPR status. The record shows that in the United States they (1) did not enroll their children in school; (2) emptied their bank account; and (3) never owned property. Although petitioners' subjective intent was to retain their LPR status, their actions did not support their intent. Id. at 733.

higher burden imposed by the IJ, it necessarily also met the burden to show removability by "clear and convincing" evidence.

In short, the evidence does not compel a reasonable factfinder to conclude that the petitioners demonstrated a continuous, uninterrupted intention to return to the United States during the entirety of their January 2002 trip to Pakistan. Id.; Sepulveda, 401 F.3d at 1230.

We also reject the petitioners' claim that the IJ erred in finding that Usmani's abandonment of his LPR status could be automatically imputed to his wife and children. As an initial matter, the petitioners are incorrect in their claim that the IJ imputed Usmani's abandonment of LPR status onto the wife. The IJ concluded that both Usmani and his wife had abandoned their LPR status. In addition, because the facts dealing with Usmani's and his wife's stay in Pakistan were so interrelated, there was no need for the IJ to use a different analysis to determine that they each abandoned their LPR status.

We have not considered the permissibility of imputation of abandonment of LPR status onto minor children, but the BIA has in Matter of Zamora, 17 I. & N. Dec. 395 (1980), and the U.S. Supreme Court has established a two-step process for reviewing an agency's interpretation of a statute which it administers. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). First, if Congressional purpose is clear, then interpreting courts and administrative agencies "must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. A second level of review, however, is triggered when

6

"the statute is silent or ambiguous with respect to the specific issue." Id. at 843. If Congress explicitly leaves a gap in a statute for an agency to fill, "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." Id. at 843-44. A court may not substitute its own construction of a statutory provision for a reasonable interpretation by an administrating agency. Id. at 844. Moreover, the authority of the executive branch to fill gaps is especially great in the context of immigration policy. I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999). An agency's interpretation is reasonable and controlling unless it is "arbitrary, capricious, or clearly contrary to law." Alabama Power Co. v. Fed. Energy Regulatory Comm'n, 22 F.3d 270, 272 (11th Cir. 1994).

Congress did not directly speak on the issue of when petitioners abandonment of LPR status can be imputed to their minor children. See 8 U.S.C. § 1101(a)(13)(C)(i)-(ii). Because the statute is silent on the issue, Congress has left a gap in the statutory scheme that could be filled by the BIA. In Matter of Zamora, the BIA held that the voluntary and intended abandonment of LPR status by the parent of an unemancipated minor child is imputed to the child who is deemed also to have abandoned his LPR status. Matter of Zamora, 17 I. & N. Dec. at 396.

The Sixth Circuit has found imputation from a parent to a child to be unreasonable in certain circumstances, such as where the imputation involves unlawful conduct. In Singh v. Gonzales, 451 F.3d 400, 409 (6th Cir. 2006), the Sixth Circuit determined that it was unreasonable for the BIA to impute fraudulent conduct from a parent to a child. However, the court specifically distinguished the imputation of abandonment of LPR status by the BIA in Matter of Zamora, noting that "imputing the intent to engage in a perfectly law act -- such as leaving the United States to return to one's native county -- is far different from imputing the intent to commit fraud." Id. at 407.

On the record here, we conclude that the BIA's interpretation of the statutory scheme in Matter of Zamora was reasonable, as the record reveals no evidence that the decision was arbitrary, capricious, or manifestly contrary to Congressional intent. Alabama Power, 22 F.3d at 272. Moreover, in this case, the IJ based the children's abandonment on their parents' lawful desire to return to Pakistan, unlike in Singh, 451 F.3d at 407, where the petitioners abandoned their LPR status due to fraud. Accordingly, there was no error in relying on Matter of Zamora to impute the petitioners' abandonment of their LPR status to their accompanying children.

**PETITION DENIED.**