# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 13, 2013

No. 12-60612

Lyle W. Cayce
Clerk

VALENTIN JOSE VALENZUELA, also known as Jose Valentin Valenzuela-Moreno

Petitioner

v.

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A090 284 945

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Valentin Jose Valenzuela petitions from a Board of Immigration Appeals ("BIA") determination that he abandoned his status as a lawful permanent resident and was not entitled to a post-conclusion voluntary departure. For the following reasons, we DENY in part, and DISMISS in part, the petition for review.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60612

**FACTS AND PROCEEDINGS**

Valentin Jose Valenzuela ("Valenzuela"), a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident ("LPR") on December 1, 1990. He has a wife, a job, and three U.S. citizen children (ages 13, 9, and 7). He also has a criminal record. Valenzuela was convicted in 1996 in the Western District of Texas of aiding and abetting an alien in violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2(a), and was sentenced to sixty days in prison and five years of probation. Later in 1996 he was arrested in Missouri and charged with possession and attempted trafficking of a controlled substance after the car he was driving was found to contain sixty to seventy pounds of marijuana; he was released on bond. After he failed to appear at a scheduled hearing in September 1997, his bond was forfeited.[1] Valenzuela also was arrested in 2001 for driving under the influence in Texas; he was placed in a pre-trial diversion program in 2003, and successfully served one year probation.

The Department of Homeland Security ("DHS") began removal proceedings in 2006 under 8 U.S.C. § 1227(a)(1)(E)(i) against Valenzuela for aiding and abetting an alien in violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2(a) within five years of adjusting status. In the removal proceedings, Valenzuela conceded removability, and instead filed a request for either a waiver of inadmissability or a post-conclusion voluntary departure.

Though he did not appear to disclose the fact on at least one of his applications for relief, during the course of the removal proceedings it came out that Valenzuela spent from roughly July 1997 to September 1999 in Mexico. Valenzuela claimed that he traveled to Mexico in July 1997 to marry his Mexican citizen wife in a religious ceremony. Valenzuela further claimed that he always intended to return to the United States after the wedding ceremony,

---

[1] The Missouri charges were dismissed after he prevailed on a motion to suppress in Missouri state court in November 2008.

No. 12-60612

but was forced to remain in Mexico to care for his sick father and work on the family farm. Valenzuela stated that he finally returned to the United States in September 1999 when one of his brothers was able to take over the care of his father. Valenzuela also cited the desire to earn money to support his pregnant wife as a reason he returned to the United States. The Immigration Judge ("IJ") declined Valenzuela's requests for either a waiver of inadmissability or a post-conclusion voluntary departure.

The IJ denied the waiver of inadmissability on two independent grounds. First, the IJ found that Valenzuela voluntarily abandoned his LPR status due to his long stay in Mexico. As evidence of Valenzuela's objective intent to abandon his status, the IJ highlighted that Valenzuela left for Mexico shortly after being released on bond for drug trafficking charges, married a Mexican citizen, remained in Mexico uninterrupted for over two years, maintained no residence or bank account in the United States, worked in Mexico, and had contact with the United States only through occasional phone calls to family and friends. The IJ found that "it is very informative and not coincidental that [Valenzuela] was released on bond on incredibly serious drug charges, then fled the United States and remained gone for a period of two and a half years during the pendency of his drug trafficking charges." Second, in the alternative, the IJ entered an adverse credibility finding against Valenzuela, and determined that Valenzuela had failed to establish his eligibility for relief. The IJ pointed to Valenzuela's failure to disclose fully his departure from the United States, a potential lack of candor about criminal arrests, and other inconsistencies in Valenzuela's account of events as justifying the adverse credibility finding.

With respect to Valenzuela's request for a post-conclusion voluntary departure, the IJ relied on the adverse credibility finding to deny relief. The IJ reasoned that Valenzuela's lack of candor made Valenzuela undeserving of a favorable exercise of discretion.

No. 12-60612

Valenzuela timely appealed to the BIA, and the BIA dismissed the appeal in a written opinion. The BIA determined that the IJ applied the proper totality-of-the-circumstances test when determining Valenzuela's intent in leaving the United States, and that the IJ properly placed the burden on DHS to demonstrate that Valenzuela abandoned his LPR status. The BIA found no clear error in the IJ's factual findings, or in the IJ's ultimate determination that Valenzuela abandoned his status as a lawful permanent resident of the United States. In response to Valenzuela's claims that he always intended to return to the United States but was forced to remain in Mexico to care for his father, the BIA noted the lack of any corroborating documentation or detailed testimony to support Valenzuela's claims that his father needed medical care, as well as the fact that Valenzuela's departure from the United States "coincided with the institution of criminal charges against him for drug trafficking in Missouri."

Because the BIA affirmed the IJ's determination that Valenzuela abandoned his status, the BIA found it unnecessary to resolve the IJ's adverse credibility findings against Valenzuela. To determine whether Valenzuela was entitled to a post-conclusion voluntary departure, the BIA balanced the positive and negative equities in the case. After noting numerous factors favoring a positive exercise of discretion—Valenzuela's lengthy residence in the United States, his relatives and children in the United States, his history of employment, and his regular payment of income taxes in the United States—the BIA concluded that those factors were outweighed by Valenzuela's criminal convictions and "his general disrespect of the law of this country in evading criminal proceedings over an extended period of time," and denied a post-conclusion voluntary departure.

4

No. 12-60612

## STANDARD OF REVIEW

When considering a petition for review, this court reviews only the BIA's decision, and not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision. *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). This court must affirm the BIA's decision if there is no error of law and if reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings. *Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003). Conclusions regarding an alien's intent are essentially factual and are reviewed for substantial evidence. *Id.* This court will not reverse a BIA determination that an alien intended to abandon his LPR status unless the alien "provides evidence so compelling that no reasonable fact-finder could conclude against [the alien]." *Id.* (internal quotations and citation omitted).

## DISCUSSION

Valenzuela makes three arguments on appeal. First, Valenzuela argues that the BIA and IJ wrongly determined that he abandoned his LPR status as a result of his extended stay in Mexico. Second, Valenzuela argues that the IJ erred in entering an adverse credibility finding against him. Third, Valenzuela argues that the BIA erred in denying Valenzuela a post-conclusion voluntary departure.

## A. The BIA Did Not Err In Determining That Valenzuela Abandoned His Status As A Lawful Permanent Resident.

Valenzuela argues that the BIA and IJ wrongly determined that he abandoned his LPR status. Valenzuela contends that the BIA and IJ focused solely on the time he was absent from the country, improperly placed the burden on him to demonstrate that he had not abandoned his status, and failed to consider the totality of the circumstances surrounding his absence from the

5

No. 12-60612

United States.  Valenzuela claims that, under the correct legal standard, his colorable claim to LPR status was not refuted by "clear, unequivocal and convincing evidence."  Neither argument succeeds.

*1) The BIA Applied The Correct Legal Standard*

"[T]o qualify as a returning resident alien, an alien must have acquired [LPR] status in accordance with our laws, must have retained that status from the time that [he] acquired it, and must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad."  *Moin*, 335 F.3d at 418 (internal quotation marks omitted).  A "temporary visit abroad" is not defined only in terms of elapsed time; a trip is "temporary" "if (a) it is for a relatively short period, fixed by some early event; or (b) the trip will terminate upon the occurrence of an event that has a reasonable possibility of occurring within a relatively short period of time."  *Id.* (internal quotation marks and citation omitted).

If the alien's trip abroad is not "relatively short," it is "temporary" only if the alien had "a continuous, uninterrupted intention to return to the United States during the entirety of his visit."  *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997) (internal quotation marks and citation omitted).  In ascertaining the alien's intent, the relevant question is not whether the alien ultimately intended to return to the United States but whether he intended to return "within a relatively short period."  *Moin*, 335 F.3d at 419 (internal quotation marks omitted).  Consideration should be given when assessing intent to the totality of the alien's circumstances including: the alien's family ties, property holdings, and business affiliations in the United States, as compared to his country of origin.  *Id.*

The BIA articulated and applied the correct legal standard. Multiple points in the BIA's opinion belie Valenzuela's contention that the BIA failed to

6

consider the totality of the circumstances. The BIA noted that "abandonment is not determined by the length of the absence alone," and proceeded to consider numerous factors (such as Valenzuela's job, criminal, and tax history) beyond merely looking at the time Valenzuela was absent from the United States.

Valenzuela's arguments that the IJ improperly placed the burden on him to demonstrate his entitlement to legal status are similarly flawed. As a preliminary matter, his brief only alleges that the "IJ erred in shifting the burden of proof from the government to him," and does not allege that the BIA improperly did so. As such, we need not address it. *See, e.g.*, *Mikhael*, 115 F.3d at 302. And even assuming that we construe his argument to contend that the BIA also erred, the opinions below demonstrate that this did not occur.

This is not a case where the IJ and/or the BIA actually placed the legal burden on the alien. *See, e.g.*, *Matadin v. Mukasey*, 546 F.3d 85, 90-91 (2d Cir. 2008). Both the IJ and the BIA stated that they placed the burden on the DHS, and a review of the record contains nothing to suggest that the burden was placed on Valenzuela to demonstrate his entitlement to relief. Valenzuela's general inability to prove a significant connection to the United States or demonstrate his father's need for medical care only became an issue after the Government convinced the IJ and the BIA that Valenzuela left the country to flee the Missouri drug trafficking proceedings, and further, that he had no significant connection to the United States during the period. The record does not indicate that Valenzuela had the burden to demonstrate his entitlement to relief, but rather just that the Government had a strong case that Valenzuela failed to rebut.

### 2) The BIA's Determination Is Supported By Substantial Evidence

The Government had the burden in the administrative proceedings of demonstrating with "clear, unequivocal, and convincing evidence" that

Valenzuela abandoned his status as a lawful permanent resident in the United States. *Moin*, 335 F.3d at 419. On appellate review under the substantial evidence standard, we must determine whether Valenzuela "provides evidence so compelling that no reasonable fact-finder could conclude" that the Government met its factual burden. We conclude that a reasonable fact-finder could agree with the BIA's determination. Given the temporal proximity of Valenzuela's pending Missouri drug prosecution to his departure from the United States, a reasonable jurist could conclude that the clear and unequivocal evidence indicated that Valenzuela did not maintain a continuous desire to return to the United States within a relatively short period because the evidence indicates that Valenzuela was leaving the country to flee criminal proceedings. Valenzuela's substantial evidence challenge accordingly fails.

## B. We Do Not Review Valenzuela's Challenge To The Immigration Judge's Adverse Credibility Findings.

Valenzuela's brief discusses potential errors with the IJ's adverse credibility finding. However, as Valenzuela admits, the BIA "declined to review the IJ's findings on this issue." Our review of the record indicates that the BIA did not rely on the adverse credibility finding to deny relief. As such, we do not address Valenzuela's arguments here because this court only reviews the decisions of the BIA. *See, e.g.*, *Mikhael*, 115 F.3d at 302.

## C. We Lack Jurisdiction To Review The BIA's Denial Of A Post-Conclusion Voluntary Departure.

Valenzuela argues that the BIA erred in denying him a post-conclusion voluntary departure. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, this court "lack[s] jurisdiction to review his claim that

the BIA erred in denying his request for voluntary departure." *Eyoum v. INS*, 125 F.3d 889, 891 (5th Cir. 1997); *see also* 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B). Accordingly, we cannot review his arguments regarding the BIA's denial of a post-conclusion voluntary departure.

## CONCLUSION

We DENY the petition for review with respect to the BIA's determination that Valenzuela abandoned his status as a lawful permanent resident. We DISMISS the petition for review with respect to the IJ's adverse credibility finding and the BIA's denial of a post-conclusion voluntary departure.