# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2010

No. 09-60093

Charles R. Fulbruge III
Clerk

REN LIANG,

Petitioner,

v.

ERIC HOLDER, JR., U.S. Attorney General,

Respondent,

Petition for Review of an Order of
the Board of Immigration Appeals
No. A77 914 309

Before KING, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

Ren Liang, a native and citizen of China, petitions for review of a removal order, entered by the Board of Immigration Appeals, denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. For the following reasons, we DENY the petition for review.

## I. BACKGROUND

In 2000, Ren Liang (Ren) tried to enter the United States with the aid of a fake Japanese passport but was detained by the Department of Homeland

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Security, issued a notice to appear, and charged as removable.  Ren admitted the allegations in the notice to appear, conceded the charge of removability, but also filed applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

During several hearings before an immigration judge (IJ), Ren and other witnesses testified, and several documents were admitted into evidence.  Ren testified that he had operated a photography and business card processing business in China and that Chinese officials had demanded money from him for a business operating license.  Ren claimed that he paid the officials the demanded amount but never received a license.  Ren further testified that these officials again came to his business and demanded more money, which Ren refused to pay.  Ren reported these incidents to the local Chinese government, accusing the government of demanding bribes, but the government ignored these accusations.  Ren claims that these events "forced" him to close his business.

Ren also claimed that he wrote a protest letter against the Chinese government, which he posted publicly at several locations.  In his testimony, Ren admitted that this was his only "political" involvement in China and that he had not been involved with political groups in China.  Ren claimed that, in response to these activities, the police came to arrest him, but he was able to avoid arrest.  Ren further testified that his parents were harassed and threatened by the police because of his activities.

Upon entering the United States, Ren became involved in protesting the Chinese government.  As part of these efforts, Ren joined the Party for Freedom and Democracy (the "Party") in 2005 and participated in several Party related events.  Specifically, Ren participated in a June 2005 vigil, protesting the Chinese government; took part in a demonstration against the Chinese government; signed a protest letter in September 2005; and took part in an anniversary celebration for a widely circulated Chinese newspaper in the United

States.   Ren testified that he is responsible for recruiting members and organizing events for the Party in Houston, Texas, but he admitted that the Houston Party chapter is quite small and that he has never organized an event in Houston.   Ren also presented a letter from his father, which claimed that Chinese officials had visited him and Ren's mother and informed them that Ren should stop his political activities in the United States.   Ren testified that he believed that, if he returns to China, he would be "sentenced and imprisoned" based on his political activities.

Two other Party members testified on Ren's behalf and described how other political dissidents had been persecuted by the Chinese government. Specifically, these witnesses claimed that Wu Xigan, a Party member who was involved in protests in Beijing, had been sentenced to twenty years in prison after the Chinese government learned of his activities; that a "nominal" Party member, Jiang Ling, had been sentenced to prison when he returned to China to visit his family; that Yu Xian Ni, a founder of the Party, had been sentenced to death for his political activities; and that other individuals were sent to prison for protesting the Chinese government on the internet.   Regarding Ren, these witnesses testified that Ren was an "important member" in the Party and that, because of his participation with the Party, Ren would be sent to jail if he was to return to China.

After these hearings, the IJ issued a written decision on February 15, 2006, finding Ren removable as charged and denying his applications for asylum, withholding of removal, and CAT protection.   In this decision, the IJ found that Ren did not meet his burden of establishing past persecution, specifically finding that while Ren was harassed in China (based on his testimony concerning his business), this harassment did not rise to the level of persecution.   Further, the IJ found that Ren did not establish a well-founded fear of future persecution and did not establish that he was likely to be tortured.

On Ren's claim that he had established a well-founded fear of future persecution, the IJ found that the examples Ren gave of Chinese citizens who had been persecuted were "high-ranking opposition party members and high-profile protest leaders."  In contrast, the IJ found that Ren had not been involved with a political opposition party while living in China and had only recently begun expressing political views.  The IJ also found that the 2004 State Department Country Report, which indicated that Chinese dissidents are often jailed for criticizing the government, did not make Ren's fears of persecution objectively reasonable because the report did not suggest that Ren (or similarly situated persons) would be subjected to persecution.  The IJ concluded that Ren's fear of future persecution was not objectively reasonable and that it was not "more likely than not" that Ren would be tortured.  Accordingly, the IJ denied Ren's applications for asylum, withholding of removal, and CAT protection.

Ren appealed the IJ's decision to the Board of Immigration Appeals (BIA), which, on July 25, 2007, dismissed Ren's appeal, finding that Ren had not established a well-founded fear of future persecution and that Ren had not established that he was likely to be tortured.  Ren then filed a petition for review of the BIA's decision in this court.  After Ren filed his opening brief, the Government moved to remand Ren's case to the BIA.  In this motion, the Government urged that the BIA should have an opportunity to "re-evaluate the impact" of one of Ren's witnesses and to "re-evaluate the [IJ]'s finding that there was little evidence that the Chinese government currently has any knowledge of [Ren's] actions."  Our court granted the Government's unopposed motion to remand.

Upon remand, the BIA issued a new decision on January 14, 2009, again affirming the IJ's denial of Ren's applications for asylum, withholding of removal, and CAT protection.  In this decision, the BIA determined that the IJ clearly erred in classifying Ren as a "general member" and in finding that there

No. 09-60093

was little evidence suggesting that the Chinese government had knowledge of Ren's activities.  However, the BIA concluded that the IJ correctly determined that Ren did not establish a well-founded fear of future persecution or a likelihood that he would be tortured upon his return to China.  Specifically, the BIA found that Ren's claims of a fear of persecution and torture were based upon comparisons with other activists, who had been jailed after extensive political activities, and that this was not an appropriate comparison to Ren's "relatively minor and recent" political activities.  Accordingly, the BIA dismissed Ren's appeal.  Ren now petitions for a review of that decision.

## II.  DISCUSSION

### A.  Standard of Review

We review the decision of the BIA as well as that of the IJ to the extent it impacted the BIA's judgment.  *See Ontunez–Tursios v. Ashcroft*, 303 F.3d 341, 348 (5th Cir. 2002).  We "must affirm the decision if there is no error of law and if reasonable, substantial, and probative evidence on the record, considered as a whole, supports the decision's factual findings."  *Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003).  We review whether the BIA's factual findings are supported by substantial evidence, and we uphold these findings "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *accord Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

### B.  Asylum

Ren focuses most of his argument on his application for asylum.  The Attorney General, in his discretion, may grant asylum to an alien who is a "refugee."  *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992).  A refugee is "any person who is . . . unable or unwilling to return to . . . [a] country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . ."  8 U.S.C. § 1101(a)(42)(A); *Chen*, 470 F.3d at 1135.  If a refugee has

established past persecution, he is entitled to the presumption of a well-founded fear of future persecution. *Mikhael v. INS*, 115 F.3d 299, 303 (5th Cir. 1997). Absent such a showing of past persecution, an applicant must independently establish a well-founded fear of persecution.[1] *Chen*, 470 F.3d at 1135.

To establish a well-founded fear of persecution, an applicant must demonstrate "'a subjective fear of persecution, and that fear must be objectively reasonable.'" *Id.* (quoting *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th Cir. 2004)). The Government does not dispute that Ren has a subjective fear of persecution; thus, the issue is whether Ren has established that his fear of persecution is objectively reasonable. To show that such a fear is objectively reasonable, an applicant must show that a reasonable person in his circumstances would fear persecution if removed. *Id.* However, this standard does not require an applicant to demonstrate that he *will* be persecuted; instead, the applicant must establish that persecution is a "reasonable possibility." *Id.* (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 440 (1987) (discussing the meaning of a "well-founded fear of persecution")). Even a relatively low probability of persecution may establish that persecution is a "reasonable possibility." *See Cardoza–Fonseca*, 480 U.S. at 440 ("There is simply no room in the [definition of a well-founded fear of persecution] for concluding that because an applicant only has a 10% chance of being shot, tortured, or otherwise persecuted, that he or she has no "well-founded fear" of the event happening.").

---

[1] We have defined persecution as:

The infliction or suffering of harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage, or the deprivation of liberty, food, housing, employment, or other essentials of life.

*Chen*, 470 F.3d at 1135 (citing *Abdel–Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996)).

No. 09-60093

To establish the objective reasonableness of a well-founded fear of persecution, an applicant must prove that:

> (1) he possesses a belief or characteristic a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and, (4) the persecutor has the inclination to punish the alien.

*Chen*, 470 F.3d at 1135–36 (citing *Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005)). We must uphold the BIA's findings on asylum unless the evidence Ren presented "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at 483–84; *accord Chen*, 470 F.3d at 1134. If we determine that a reasonable factfinder would not necessarily be compelled by the evidence to conclude that Ren established a well-founded fear of persecution, we must uphold the BIA's denial of Ren's application for asylum, absent a showing that the BIA misapplied the law.[2] *Chen*, 470 F.3d at 1134.

### 1. Past Persecution

Ren argues that he established past persecution and is entitled to a presumption of a well-founded fear of future persecution.[3] *See Mikhael*, 115 F.3d at 303. Specifically, Ren urges that he suffered politically motivated economic

---

[2] Ren does not specifically argue that the BIA applied erroneous legal standards, and in our review of the record, we find no misapplication of the law here. *Cf. Cardoza–Fonseca*, 480 U.S. at 440 (holding that requiring a more likely than not standard of proof for persecution was improper in determining whether petitioner established a well-founded fear of persecution for an asylum claim); *Mikhael*, 115 F.3d at 305 (reversing the BIA's denial of petitioner's asylum application when the IJ required the petitioner to prove that he would be subject to persecution).

[3] The Government urges that we lack jurisdiction to review Ren's claim of past persecution because he failed to exhaust his administrative remedies on this claim. However, Ren presented these claims to the IJ and the BIA, and both found that Ren failed to establish past persecution. After remand from this court, the BIA again found that Ren failed to establish past persecution. As such, we address the merits of Ren's argument here.

7

persecution in China because he was "forced out of business due to an excessive fine." The IJ found, and the BIA agreed, that it was unclear whether the fees demanded by the Chinese government were legal and also found that, even if these fees were illegal, Ren was not "physically harmed or jailed" and that he was harassed, not persecuted.

The record here supports the IJ's findings that Ren was not persecuted by Chinese officials. The fees demanded by Chinese officials and the manner in which those fees were demanded may have been improper and burdensome, but they do not constitute "'the deliberate imposition of severe economic disadvantage, or the deprivation of liberty, food, housing, employment, or other essentials of life.'" *Chen*, 470 F.3d at 1135 (quoting *Abdel–Masieh v. INS*, 73 F.3d at 583). Further, nothing in the record suggests that these fines were imposed based on Ren's beliefs, political or otherwise. Ren's claim that he was "forced out of business due to an excessive fine that was imposed with a questionable motive" and thus suffered persecution is a conclusion that is not compelled by the evidence he presented. The BIA's finding that Ren failed to establish past persecution is supported by substantial evidence.

*2. Well-Founded Fear of Future Persecution*

Ren also claims that he independently established a well-founded fear of persecution based on his political activities in the United States. The BIA concluded that Ren failed to "demonstrate[] that someone with [Ren's] comparatively limited and recent political activism in the United States has an objectively based well-founded fear of future persecution . . . ."

We cannot say that the evidence Ren presented is so compelling such that any reasonable factfinder would conclude that Ren has established a well-founded fear of future persecution—even though the probability of persecution can be quite low and still be "well-founded." *See Cardoza–Fonseca*, 480 U.S. at 440; *Chen*, 470 F.3d at 1135. Some of the evidence Ren presented supports his

fear of persecution: Ren has been involved in public protests against the Chinese government, through publishing articles and attending public rallies; Ren is more than a general member of the Party; Ren's parents have been harassed on the basis of his activities; and other political dissidents have undoubtedly been punished by the Chinese government. However, other evidence supports the BIA's conclusion that this fear is not well-founded: Ren has not been involved in political protests for very long; Ren's protests in China were limited and only arguably involved a political purpose; Ren was not affiliated with a political protest group while he lived in China; and Ren's role in the Party is not foundational or very extensive (by his own admission he has not yet organized events, and he is not a founder of the Party.)

As such, the BIA's determination "that someone with [Ren's] comparatively limited and recent political activism in the United States" does not have an objective, well-founded fear of persecution is a reasonable conclusion to draw based on the evidence Ren presented. Ren and his witnesses mostly identified activists that had been persecuted after extensive political involvement, and the information contained in the State Department Country Report (and other documents) is equivocal as to whether Ren's level of political involvement would lead to persecution by the Chinese government. The BIA's finding that Ren does not have an objective, well-founded fear of persecution is supported by substantial evidence, and Ren's application for asylum was properly denied. *See Chen*, 470 F.3d at 1138.

**C. Withholding of Removal**

Ren also argues that the BIA erred in denying his application for withholding of removal. "To be eligible for withholding of removal, an applicant must demonstrate a 'clear probability' of persecution . . . ." *Chen*, 470 F.3d at 1138 (citing references). Though establishing eligibility for withholding of removal does not require showing a subjective fear of persecution, it does require

that the applicant show that he will "more likely than not" be subjected to persecution. *Id.* (citing *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002)). The BIA's denial of an application for withholding of removal is a factual conclusion that this court reviews under the substantial evidence standard. *Id.* at 1134.

Because we conclude that Ren did not present evidence that would compel any reasonable factfinder to conclude that he faces a "reasonable possibility" of persecution, we necessarily conclude that Ren has not presented evidence that would compel any reasonable factfinder to conclude that he faces a "clear probability"—a "more likely than not" chance—of persecution. *See id.* at 1138. The BIA's finding that Ren failed to establish a "clear probability" of persecution is supported by substantial evidence, and Ren's application for withholding of removal was properly denied. *See id.*

### D.  CAT Protection

Finally, Ren argues that the BIA erred in denying his application for protection under the CAT. To be eligible for CAT protection, an applicant must demonstrate "that it is more likely than not that he . . . would be tortured if removed." *Id.* at 1139 (internal quotation marks omitted). The BIA's denial of an application for CAT protection is a factual conclusion that we review under the substantial evidence standard. *Id.* at 1134. We have defined torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . based on discrimination of any kind [when such acts are initiated or implemented by one acting in a public or official capacity.]" *Id.* at 1139 (quoting 8 C.F.R. § 208.18(a)(1)). "Claims based on the [CAT] differ from those based on eligibility for asylum or withholding of removal . . . because proof of torture, not simply persecution[,] is required." *Id.* (internal quotation marks omitted).

Ren's brief does not identify any specific evidence that suggests that he will be tortured, instead arguing generally that "China's mistreatment, torture,

No. 09-60093

and even execution of prisoners, especially political prisoners, are well-documented." As such, Ren does not present evidence that would compel any reasonable factfinder to conclude that "it is more likely than not that he . . . [will] be tortured if removed" to China. 8 C.F.R. § 208.16(c)(2). The BIA's finding that Ren failed to establish that he will "more likely than not" be tortured is supported by substantial evidence, and Ren's application for CAT protection was properly denied.

## III. CONCLUSION

For the foregoing reasons, we DENY the petition for review.

DENIED.

11