**Ronghua JIANG, Petitioner,**

v.

**Eric H. HOLDER, Jr., U.S. Attorney General, Respondent.**

No. 10–60680.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 2011.

Donglai Yang, Law Office of Donglai Yang, New Orleans, LA, for Petitioner.

Lindsay Brooke Glauner, Gerald Mark Alexander, Tangerlia Cox, U.S. Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before KING, DAVIS, and GARZA, Circuit Judges.

PER CURIAM: *

Ronghua Jiang ("Petitioner"), a native and citizen of the People's Republic of China, petitions for review of a final order of the Board of Immigration Appeals ("BIA") dismissing his appeal from an order by the immigration judge ("IJ") denying his application for asylum.[1] For the

---

1. The IJ also denied Jiang's application for withholding of removal and protection under the Convention Against Torture ("CAT"). Petitioner does not challenge this ruling and has therefore abandoned this claim. *Soadjede v. Ashcroft,* 324 F.3d 830, 833 (5th Cir.2003).

following reasons, the petition is DENIED.

## I.

Jiang was admitted into the United States in July 2007 with authorization to remain until October 22, 2007. A Notice to Appear was issued in July 2008, charging Jiang as being removable for remaining in the United States without authorization. Jiang conceded his removability and applied for asylum. He asserted that he suffered past persecution because of his political opinion related to his opposition to the government forcing his wife to have two abortions and a procedure forcibly sterilizing her.

Jiang testified before the IJ that his wife, a teacher at a government school, gave birth to their daughter in 1987. In 1989, his wife became pregnant again. When the school authorities discovered the pregnancy, they "forced" his wife to undergo an abortion. Jiang admitted that there was no physical force but that he and his wife decided she would undergo the abortion because the school threatened to fire her and there was a "huge fine" for having a second child.

Jiang and his wife decided to try to have another child after the abortion, hoping they would only be fined or suffer an administrative punishment, such as a reduced salary. Shortly after she became pregnant in December 1990, Jiang took his wife to his parent's home in an attempt to escape detection. However, the school authorities discovered the pregnancy and told her to have an abortion. They told Jiang that they would both be fined, Jiang's wife would be fired, they would lose their home (which was provided by the school), and Jiang would be arrested if he resisted. The school authorities also notified Jiang's government employer, who threatened to fire him if his wife did not undergo the abortion. In the face of these threats, Jiang's wife underwent the abortion in July 1991, and she was involuntarily sterilized in October 1991.

After her abortions and sterilization, Jiang's wife continued to be employed at the school, and neither she nor Jiang suffered any additional consequences. In 1992, Jiang quit his government job and opened a restaurant which he operated until 2002. In 2005, Jiang was employed at a private media and advertising company. In 2007, more than 15 years after his wife's abortions and sterilization, he quit this job in order to travel to the United States to see his daughter, a university student in Ohio.

The IJ determined that Jiang testified credibly and that his acts of resistance to the one-child policy included: (1) the efforts by Jiang and his wife to have a second child; (2) the opposition of Jiang and his wife to both abortions; (3) the attempts by Jiang and his wife to garner support from the community to petition family planning officials for an exception to the one-child policy; and (4) hiding his wife during her second unsanctioned pregnancy. However, the IJ found that the threats to arrest Jiang and impose economic sanctions constituted coercion but not persecution because none of the threats were carried out. The IJ also found that Jiang's loss of the aborted children and the ability to procreate with his wife did not qualify as persecution.

Jiang appealed the IJ's decision and the BIA affirmed the IJ's decision without an opinion. Jiang then filed this timely petition for review.

## II.

Because the BIA summarily affirmed the IJ's opinion, we review the IJ's opinion. *Eduard v. Ashcroft*, 379 F.3d 182, 186 (5th Cir.2004). We review findings of fact to determine whether they are supported

by substantial evidence, and we review conclusions of law de novo. *Zhu v. Gonzales,* 493 F.3d 588, 594 (5th Cir.2007). On substantial evidence review of factual findings, we reverse "only when the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Arif v. Mukasey,* 509 F.3d 677, 679–80 (5th Cir.2007) (internal quotation omitted).

Accordingly, to reverse a determination by the BIA (or the IJ in this case) that a petitioner did not suffer past persecution, a petitioner must show that the evidence he presented was so compelling that no reasonable fact finder could fail to find that the petitioner suffered persecution. *Jukic v. I.N.S.,* 40 F.3d 747, 749 (5th Cir. 1994) (internal quotation omitted). *Zhang v. Gonzales,* 432 F.3d 339 (5th Cir.2005).

### III.

Jiang argues that the BIA erred in determining that he is not eligible for asylum because he failed to prove that he suffered past persecution based on his resistance to China's family planning policies. We first consider the statutory framework under which an applicant may apply for asylum.

### A.

Under the Immigration and Naturalization Act ("INA"), an alien who arrives in or is present in the United States may apply for asylum. *See* 8 U.S.C. § 1158(a)(1) (2010). The Attorney General or the Secretary of Homeland Security has discretion to grant asylum if the alien satisfies his burden of establishing that he is a "refugee." *Id.* § 1158(b)(1). The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded

fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A).

An alien need not suffer physical harm to establish persecution; for example, "the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment, or other essentials of life" may be enough to establish persecution. *Tesfamichael v. Gonzales,* 469 F.3d 109, 114 (5th Cir.2006) (internal quotation omitted). However, persecution must be extreme to qualify an applicant for asylum because it does not encompass all treatment we might consider unfair or unjust. *Majd v. Gonzales,* 446 F.3d 590, 595 (5th Cir.2006).

In 1996 Congress specifically provided that persons subjected to forced abortions and involuntary sterilizations have been per se persecuted on account of political opinion:

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well-founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well-founded fear of persecution on account of political opinion.

*Id.* § 1101(a)(42)(B). After Congress enacted 8 U.S.C. § 1101(a)(42)(B), the BIA interpreted it as providing presumptive refugee status to the spouses of persons forced to undergo an involuntary abortion or sterilization. *In re C–Y–Z,* 21 I. & N. Dec. 915, 919–20 (BIA 1997). Later, the

Attorney General overruled the holding in C–Y–Z to the extent that it permitted per se eligibility for spouses forced to have an abortion. The Attorney General determined that a spouse of one forced to undergo an abortion or sterilization is not presumptively entitled to asylum eligibility, but must instead satisfy the other elements of the statute by demonstrating that he was personally persecuted based on his refusal and the refusal of his spouse to undergo such a procedure or "other resistance" to a population control program. See In re J–S, 24 I. & N. Dec. 520, 534 (BIA 2008).

Thus, a claim for asylum by an alien whose application is based on his wife's coerced abortions and sterilization must be analyzed on a case-by-case basis to determine whether the husband personally suffered persecution on account of his resistance to a coercive population control program. See In re: J–S., 24 I & N Dec. 520 at 537–38, 542 (A.G.2008).[2] With this framework in mind, we turn to Jiang's particular arguments.

## B.

█ The IJ found that the "harm threatened [was] sufficient for the Court to have found that the abortions and the sterilization were "forced" or "compelled" under In re T–Z, 24 I & N Dec. 163 (BIA 2007)[,] and that respondent's wife has been persecuted." The IJ then found that "the threats to arrest the father of an unborn child and to impose economic sanctions, including loss of employment, a fine, [and] loss of living quarters, to compel submission to an abortion, without more, do not rise to the level of persecution."

Jiang disagrees, arguing that the threats were so severe that they rose to the level of persecution and that the IJ erred in concluding that the threats did not qualify as persecution because they were not carried out. We do not read the IJ's ruling as concluding that threats of sanctions can never qualify as persecution if those threats are not carried out. We interpret his ruling as saying that the threats against Jiang, which were not carried out, did not rise to the level of persecution.

Jiang failed to establish that if he and his wife had lost their jobs and their home, they would have been unable to find employment or housing elsewhere. In fact, Jiang voluntarily became self-employed in 1993 when he opened his own restaurant, which he operated until 2002. Jiang also conceded that his wife became pregnant the third time in the face of threats by government officials, suggesting that they viewed these threats as a burden but not a severe one. See Liang v. Holder, 367 Fed.Appx. 557, 562 (5th Cir.2010) (concluding that the "excessive fine" may have been improper and burdensome but did not amount to "the deliberate imposition of severe economic disadvantage"). Therefore, the record evidence does not compel us to find that the threats were so severe as to amount to persecution.

█ Jiang also testified that police officers threatened to arrest him if he interfered when his wife was being taken to the hospital for the second abortion. However, he made no showing that the arrest was likely to be for an extended period of time or lead to mistreatment. We have found in other cases that actual arrests do

2. See also Bing Shun Li v. Holder, 400 Fed. Appx. 854 (5th Cir.2010) (determining that a man whose wife underwent a forced abortion and who was personally detained, interrogated, given a minor beating, and fired from his job did not suffer past persecution); Fangwen Yang v. Holder, 405 Fed.Appx. 825 (5th Cir. 2010) (determining that a man who was beaten by family planning officials following his wife's forced abortion had not suffered past persecution).

not amount to persecution and, similarly, the threat to arrest in Jiang's situation does not compel a finding of persecution. *Li v. Holder*, 400 Fed.Appx. at 858; *Abdel–Masieh v. I.N.S.*, 73 F.3d 579 (5th Cir.1996).

## IV.

We therefore conclude that the IJ's determination that the threats against Jiang were not so severe as to amount to persecution is supported by substantial evidence and the IJ therefore did not err in finding that Jiang was not eligible for asylum. Accordingly, this petition for review is DE-NIED.

---

*\* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under